May Term, 1852.

INDIANA CEN-
TRAL RAILWAY
COMPANY
v.
STATE OF IN-
DIANA, &c.

</div>

---

THE INDIANA CENTRAL RAILWAY COMPANY *v.* THE STATE OF INDIANA AND THE TRUSTEES OF THE INDIANA ASYLUM FOR EDU-CATING THE DEAF AND DUMB.

An injunction should not be granted, under the R. S. 1843, till the adverse party has had ten days' notice of the time and place of hearing the ap-plication therefor, unless the bill shows an urgent necessity that the in-junction should be granted before notice can be given, and that an emer-gency exists which the complainant could not, by reasonable diligence, have prevented.

May Term,
1852.

INDIANA CEN-
TRAL RAILWAY
COMPANY
v.
STATE OF IN-
DIANA, &c.

Tuesday,
June 8.

Where a company is authorized, by an act of the legislature, to construct a railroad between two designated points, they have a right to occupy, in the construction of the road, any land of the state between those points, on the general route authorized, which may be necessary for the purpose.

The legislature may take public property for any particular public use, or delegate to a company the authority to do so, without making any provision for compensation.

The fact that the *Indiana Central Railway* has been located on some part of the tract of 80 acres of land purchased for the use of the institution for educating the deaf and dumb, does not, alone, authorize the conclusion that the uses and purposes for which the institution was located on such tract would be so materially interfered with as to justify the enjoining of the company from crossing it.

APPEAL from an interlocutory order of the judge of the *Marion* Circuit Court granting an injunction.

SMITH, J.—The bill of complaint filed in this case charges, that on the 30th of *May*, 1846, the complainants, pursuant to an authority given them by an act of the legislature, purchased eighty acres of land about one mile east of the city of *Indianapolis*, for the purpose of erecting thereon the necessary buildings, and of establishing permanently the institution of the state for educating the deaf and dumb; that a deed was taken conveying the premises in fee to the state for the use of the said trustees; that the complainants have erected thereon large, costly, and convenient buildings suitable for said purposes; that the institution has been and is in a flourishing condition, with a large number of pupils; and that the peculiar character and infirmities of the deaf and dumb require, for their safety and protection, that the asylum at which they are taught, and the grounds which they cultivate for the benefit of the institution, and upon which they exercise for their health, should not be crossed or run over by any railroad or railroad cars.

It is further charged that the said *Indiana Central Railway Company* (incorporated in the year 1847) have, since the erection of said buildings, located, and have commenced the construction of, their railroad through and over said land, making the excavations and preparing the

ground for a railroad track, without the consent of and against the protests and remonstrances of the complainants, and give out in speeches, &c., that they will construct their road over said grounds, and run upon it locomotives and cars, unless immediately restrained, to the irreparable injury of the institution and grounds, although said railroad could be conveniently located on other grounds adjoining those of the institution.

May Term, 1852.

INDIANA CENTRAL RAILWAY COMPANY

v.

STATE OF INDIANA, &c.

The prayer is for a temporary injunction to operate immediately, and for a perpetual injunction upon the final hearing.

There is an affidavit accompanying the bill, sworn to by one of the trustees of the asylum, in which the deponent states, in addition to the usual averment that the bill is true in substance and matters of fact, that the railway company, by their contractors or agents, were, at the time the bill was filed, at work upon said road on said land, to the injury of the ground and institution, and would, as he verily believed, before ten days, do much more injury and damage unless immediately restrained.

Upon the filing of the bill and affidavit, an injunction was granted without notice to the opposite party. From the order granting this injunction the present appeal is taken.

The first question we are required to decide is, whether the facts shown by the bill and affidavit presented such a case of emergency as authorized the granting an injunction, in vacation, without notice.

We are of opinion that they do not. The statute on this subject provides that " no injunction shall be granted, except in cases of emergency, until the adverse party has had ten days' previous notice of the time and place of making the application therefor," unless the application be made in open Court, &c. R. S. c. 46, s. 129. What constitutes such a case of emergency as is here contemplated, is necessarily left for the determination of the judge in each particular case. But it is not every case in which injury might be done to the complainant during the ten days required for the notice, that should

May Term,
1852.

INDIANA CEN-
TRAL RAILWAY
COMPANY
v.
STATE OF IN-
DIANA, &c.

be so considered. In the case of *Vance* v. *Workman*, 8 Blackf. 306, a bill was filed to restrain the defendants from selling certain land upon execution, and though the bill was filed on the day the sale was to take place, it was held not to be a case of emergency, no reason being assigned and no excuse offered why the bill was not filed at an earlier date. The principle here asserted is, that the complaining party must not only show that an immediate injury is about to be inflicted, but also that he could not reasonably have anticipated it in time to give the requisite notice. Otherwise the complainant might always make a case of emergency, by waiting until the act he desires to have restrained is upon the point of being done.

In the present case, all that is alleged to show that it is a case of emergency is, that the railway company had commenced making their road to the injury of the land described in the bill, and that it would, before ten days, do more injury, unless immediately restrained. It is not stated when the road was first surveyed and located, or how long before the bill was filed it was known to the complainants that the defendants had entered upon the land in question for the purpose of making their road across it. For anything that appears, therefore, the complainants may have had ample time to give notice and apply for an injunction before any injury was done to them, and there was no necessity for their waiting until the contractors had actually commenced making excavations before filing their bill.

We think the legislature did not intend to encourage *ex parte* applications of this nature, or that a judicial power operating so peremptorily and so seriously upon the rights and interests of an absent party, should be exercised when there is no urgent necessity for it, and when it does not appear that an emergency exists which the complainant could not, by reasonable diligence, have prevented.

Having decided that the facts in the case do not show such an emergency as should authorize the granting of an injunction without notice, the order appealed from might

be reversed without noticing the other points made in the argument, but as two of the questions thus raised would necessarily come up again upon the case being sent back to the Circuit Court, we have thought it our duty to consider them.

May Term, 1852.

Indiana Central Railway Company v. State of Indiana, &c.

The first of these refers to the right of the defendants, under the powers granted by their charter, to locate their road on land belonging to the state. If the legislature should pass an act authorizing a company to construct a railroad between two designated points, and all the land between such points was owned by the state, we think the company would be authorized to occupy so much of such land as should be necessary for their purpose. Nor can we perceive any reason why the same conclusion does not follow, when the state owns a part only of the land, upon the route which the company are authorized to take, between the points designated, so far as respects that part.

It is urged as an argument against the right of the railway company to occupy any portion of the land in question, that no provision is made in their charter for ascertaining the damages and making compensation for the occupation of land belonging to the state. But that would not be necessary if the state did not intend to require compensation to be made. The legislature may, no doubt, take public property for any particular public use, or delegate an authority to do so to a company, without making provision for compensation. It is only when private property is taken for such purposes that the constitution requires such a provision to be made.

In the present case the railway company are authorized by their charter to construct a railway in the general direction of the *National Road*, so as not to interfere with said *National Road*, from *Indianapolis* east to the state line, on the best ground for the interest of the company and for the public convenience, and to enter upon any land for the purpose of locating the railway and to procure the necessary materials. There is no averment that the road is not located in accordance with these specifications as to the line of way to be pursued, and we cannot so con-

May Term,
1852.

INDIANA CEN-
TRAL RAILWAY
COMPANY
v.
STATE OF IN-
DIANA, &c.

strue the charter as to say that the company are required to diverge from such a line, in order to pass around an intervening tract of land because the title is in the state, and to locate their road wholly on private property.

The bill does not state that the persons designated as trustees of the asylum are a corporation, and we have not thought it necessary, in the consideration of the present case, to look into the acts of the legislature to ascertain whether they are a corporation or merely agents of the state to manage the institution. If they are incorporated, and the state holds the title to the land merely as a trustee for their use, the question might be raised whether they are not entitled to compensation in the same manner as the owners of private property; but this question is not now before us.

Another point argued by the counsel for the appellees was, that, admitting the right to construct a railway on the land in question, a Court of Chancery has jurisdiction to restrain the appellants from so constructing it as to occasion unnecessary damage to the appellees. This position may be correct in point of law, but we do not think the facts presented by the bill before us afford sufficient grounds for such an interference. It is not charged that any injury is done or will be done to the buildings erected by the appellees, which might be avoided by a change in the location of the railway, and we do not think we should be authorized to determine, from the single fact that the railway has been located on some part of a tract of eighty acres of land purchased for the use of the institution, that the uses and purposes for which the institution was placed on that particular tract will be so materially interfered with, that the appellants should be restrained from crossing it.

*Per Curiam.*—The order of the judge granting the injunction is set aside, with costs. Cause remanded, &c.

*C. H. Test*, for the appellants.

*O. H. Smith, S. Yandes, J. Morrison,* and *S. Major*, for the appellees.