(Franklin County Court of Common Pleas.)

THE STATE OF OHIO *v.* THE LAKE SHORE AND MICHIGAN SOUTHERN RAILWLY COMPANY.

---

1. The plea of the statute of limitations is not available, in this case, against the claim of the state.
2. The claim of the state to the land in dispute can not, legally, be defeated by equitable estoppel.
3. If estoppel *is* a sufficient defense against the claim of the state, the essential elements of such an estoppel are not disclosed in the answer.
4. Public agents are not vested with apparent authority.
5. Neither the Board of Public Works nor the Canal Commissioners were authorized to sell and convey the land in dispute; nor could they by their conduct, either express oral assent or silence, consent to the Northern Indiana Railway Company laying its tracks and erecting its buildings, etc., on said land, so as to estop the state from claiming the land, because such consent was not within the apparent authority of such officers as agents of the state, assuming that they had such authority.
6. If the state failed to take possession of the land and use it for a hydraulic site, to which use it was restricted by the deed conveying it to the state, the defendant, as the successor to the rights of the Northern Indiana Railroad Company, can not insist on a forfeiture of the land, that being a right personal to the grantor of the state, if it existed in anybody.
7. The statute which authorized the attorney-general to institute this action in Franklin county is not unconstitutional.

(Decided March, 1895.)

---

PUGH, J.

This action was brought by the State to recover from the defendant the possession of a fraction of an acre of ground, situated in Toledo, Ohio, which has been used by the defendant as its terminal property, and on which are located its warehouses, elevators, freight houses, round-houses, station buildings, bridges, docks and other property, costing several million dollars.

There are eight defenses in the answer.

The plaintiff has demurred to all but two.

The defendant is the successor to the Northern Indiana Railroad Company, and it succeeds to whatever rights that company had in the land whose recovery is here sought.

One defense is that the defendant has been in actual, continuous and adverse possession of the land, under a claim of title, for over forty years. It is a plea of the statute of limitations.

There is no merit in this defense.

There is no better settled rule than this, that the bar of the statute of limitations cannot defeat a claim in favor of the state, unless the state is introduced merely as a formal party, and the real remedy sought in its name is but the enforcement of a private right. *Booth* v. *U. S.*, 11 G. & J. 373; *U. S.* v. *Insley*, 130 U. S. 263; *Ourtner* v. *U. S.*, 149 U. S. 662; *U. S.* v. *Des Moines*, 142 U. S. 510; *U. S.* v. *Beebe*, 127 U. S. 338.

In *Seeley* v. *Thomas*, 31 Ohio St. 308, Judge GILMORE expressed the rule in this language:

" The doctrine is well settled, in the absence of a statute to the contrary, that no laches is to be imputed to the government, and against it no time runs so as to bar its rights."

The tract of land in controversy adjoins the canal in Toledo. The tracks of the defendant intersect the canal at the point where the land and the canal join each other.

In obedience to a statute which conferred the authority, the Board of Public Works, in 1853, authorized the Northern Indiana Railroad Company, the predecessor of the defendant, to construct a tunnel under the canal at this point for the passage of its trains to and from either side of it.

At that time, the tracks and other structures of the last named company were located on the land in question, and the board had full knowledge and notice of that fact. That map, which was then submitted to the board, showing where the tunnel was to be located, exhibited the land sought to be recovered, and it was on this map that the company made its proposal as to the tunnel, and on which the board accepted it. The board made no objection to that company placing and constructing its tracks and other structures on the disputed ground, but they permitted it to go on ".with full knowledge of the conditions, objects and purposes," and acquiesced in all the company did at so much expense.

The defense under consideration uses the "slippery" term "acquiesced." Acquiescence, which occurs while the transaction is in progress, is only estoppel.

*De Busssche* v. *Alt*, 8 Ch. D. 314. It is a *quasi* estoppel. 2 Pomeroy's Eq., sec. 917.

To constitute a defense, it must have all of the essential elements of an estoppel. Acquiescence which does not come up to this measure cannot deprive a person of his legal rights. *Russell* v. *Watts*, 25 Ch. D. 585-6; *Menendez* v. *Holt*, 128 U. S. 524; *Lamotte* v. *Wisner*, 51 Md. 561.

This whole defense is one of equitable estoppel. Is such a defense available against the state?

Unless laches is a form of estoppel, a proposition which might be maintained with some show of reason, this question has not been decided by our Supreme Court.

There is equally as strong reason, however, for the contention that the state's rights should not be defeated by estoppel as there is for concluding that the statute of limitation does not foreclose its rights.

The general rule is that a sovereign's claims cannot be defeated by estoppel. *Johnson* v. *United States*, 5 Mason, 425 ; *Carr* v. *United States*, 98 U. S. 433.

Unlike an individual, the state can only act by its agents or officers. There would be manifest wisdom and justice in binding the state by their authorized acts ; but there would be neither in estopping the state by their unauthorized acts and declarations.

The powers of the Board of Public Works and of the Canal Commissioners were limited. Their only implied powers were such as were essential to the due and sufficient exercise of the powers which were expressly granted. *Mygatt* v. *Washburn*, 15 N. Y. 316 ; *Holten* v. *County Commissioners*, 55 Ind. 194.

Public officers cannot bind the government they represent by acts beyond and in direct opposition to their express authority, but which are within the scope of their implied authority; because they do not possess, and cannot exercise, the last named powers, called apparent powers. In this respect, they are unlike the agents of individuals.

Some courts have even resolved that the state is not bound by the contract of a public agent which was not specifically authorized, although it related to a subject within the general scope of his powers.

One who deals with such an agent must, at his peril, ascertain the nature and extent of his powers. *Parsel* v. *Barnes*, 25 Ark. 261; 25 Ark. 272; *Merchant's Bank* v. *Bergen Co.*, 115 U. S. 384; *Spitzer* v. *Blanchard*, 82 Mich. 234.

Again, it is said by an author whose opinion is equal to some, and superior to many, judicial opinions, in weight of reason, that a state is *never* estopped by the acts of its public agent which are done under an apparent authority, that is not real. Bishop's Contracts, secs. 310, 993 (revised edition).

One of the essential elements of an estoppel, between individuals, is that the agent of the party against whom it is invoked must have acted at least within the "apparent authority contained in, and conferred by, the terms of his commission, or the nature of his official functions, or his employment."

The Board of Public Works had no authority to pass or transfer the title of the land in question; it was outside of the apparent scope of their authority, assuming that they had such authority, which I do not concede.

In *State, etc.* v. *Railway Co.*, 37 Ohio St. 157, the board was denied the right to grant to a railroad company the right to lay its tracks, and maintain and operate a railroad along the berme bank of a canal.

The contention of the company was that such power followed as a logical corollary of the power of the board to authorize railroads to cross the canals.

The acre of ground in question was purchased for a hydraulic site in obedience to a statute (Act of February 7, 1826, 24 Ohio Laws, 58), to be used in connection with the canal. The Canal Commissioners were not empowered to sell it. (See second section of same act). The title in fee was vested in the state, as another statute ordained. Act of February, 1825, (23 Ohio Laws, 50).

The power of the Board of Public Works to authorize the Northern Indiana Railway Company to lay its tracks and operate its road on this ground, by the plainest analogy from the case cited, had no more legal existence than had the power to authorize another railway company to do the same thing on the berme bank of the canal.

This land, bought for hydraulic purpose, had no closer relation to the canal than had the berme bank.

As was said in that case, it is a question of power, and the board did not possess the power.

Not having the power, express or apparent, no act of the board can estop the State from asserting its legal title to the land.

It was argued that the right of the company to lay its tracks on the State's ground was impliedly, or perhaps necessarily, granted by the charter authorizing the company to build a road from Toledo to another point between which this land was situated, an Indiana case, (*Indiana Central Railway Company* v. *State of Indiana*, 3 Ind. 421), having been appealed to to sustain it.

This was relied upon by the defeated party in the case reported in 37 Ohio State, where the Supreme Court questioned its soundness. When the Northern Indiana Railway Company was granted a charter to locate and build a road between Toledo and any other place, the charter only fixed the termini of the road. It did not attempt to define the location of the road. That could not be done till the company surveyed and staked the route, and purchased or appropriated, in the exercise of the power of eminent domain, the ground. Till that was done, its right did not vest; it did not attach to any particular or definite land. If the State had owned all of the lands between the termini, so that the road could not be located except by going over it, there might be some plausibility in the contention.

Another element of estoppel affecting title to land is either fraud, or its equivalent in culpable negligence. If it was negligence, it must have been the proximate cause of the loss, and the neglect must have been of some duty which was owing to the party misled, or to the public. *Leather Mfr'sBank* v. *Morgan*, 117 U. S. 108; *Hunsboro* v. *Bissell*, 18 Wall. 271; *Lehigh Co.* v. *Bonford*, 150 U. S. 665; *Brown* v. *Insurance Co.*, 42 Md. 385.

This defense does not disclose that the Board of Public Works was guilty of any deception or fraud which led the Northern Indiana Railroad Company to occupy this land and improve it. It owed no duty to either railroad company.

By those courts which have espoused the doctrine that estoppel may be invoked against a government, it is conceded that it cannot be done, when it is that species of estoppel which exists where one party makes an untruthful assertion that misleads another to his prejudice. They hold that it can only be done when one is precluded from taking inconsistent positions, as, " where having taken one by which he was benefited at the expense of another, he is not permitted to repudiate that and take another inconsistent position, to the prejudice of that other."

A false representation, or a misleading statement, is not an ingredient of that sort of estoppel.

This is the extreme point to which those courts have gone in holding governments bound by estoppel. Making an application of the rule to this case it cannot aid the defendant. Its third defense does not affirm that the state or its agent, the board, adopted a position which was beneficial to it and expensive to the Northern Indiana Railroad Company. How was the state benefited by the construction of its tracks, etc., on this ground?

It cannot be said that the benefit will consist of the improvements; because the state will not necessarily acquire them, if it prevails in this action.

But there is another, and a controlling, reason why the third defense is not invulnerable to the demurrer.

Where the doctrine of estoppel is invoked concerning the title to land, the party misled must not only appear to have been ignorant of the true state of the title, but also without the means of acquiring knowledge. *Brant* v. *Va. Coal Co.*, 93 U. S. 336.

The third defense does not make it appear that the Northern Indiana Railroad Company was thus ignorant, and thus without the means of knowledge as to the title.

Both sides of this question were intelligently and ably discussed in *Lake Superior Ship Canal, Ry. & Iron Co.* v. *Cunningham*, 44 Fed. Rep. 819, by Judges JACKSON, BROWN and SEVERENS, the first two deciding that estoppel could not be invoked against a government, and the latter dissenting.

In the deed by which this acre of ground was conveyed to the state, its use was restricted to a hydraulic site.

Another defense, taking this as a basis, affirms that the state never, in fact, took possession of it for the purpose of a hydraulic site; that it cannot be used for that purpose, or for any public use in connection with the canal; that it is only valuable for the railroad company, and for the general public, as it is now used in the discharge of its public duties by the company. The conclusion from this one fact, and these assumptions is, that the claim of the State is stale.

This is a unique defense against the alleged disseizin of the state of this land.

The defendant has no shadow of right to insist on a forfeiture of the land, because the state had not used it for the purpose restricted by the deed. That is a purely personal right in the grantor of the state.

As to the defense of staleness or laches, that is denied by the decision in 31 Ohio St., already cited.

Another defense, bisected into two defenses in form, is that the statute which authorized the Attorney General to institute the action in this county, instead of Lucas county, is unconstitutional. That question was decided on the defendant's motion to quash the service of summons.

There is no reason for changing the conclusion.

The defendant has no vested right to be sued and to have this action tried in Lucas county, where the land is situated. It is matter which it is competent for the legislature to regulate by statute.

It is is not obnoxious to the organic law which requires all laws of a general nature to have a uniform operation, because it does operate uniformly upon all railroal corporations, that are in possession of the lands mentioned in this act, and which the state seeks to recover. This act is no more unconstitutional on this ground than is the statute which authorizes service of summons on railroad corporations in a manner different from that by which individuals may be served.

Nor does the act deny to the defendant the right to trial by jury. There is not even a semblance of constitutional right in any person to have the trial of an ejectment case before a jury of the county in which the land is located.

It is not profitable to dwell on either of these defenses.

The demurrers of the state will be sustained.

The motion against the fifth defense is also sustained.

*J. K. Richards, Attorney General,* for the State.

*E. D. Potter,* for the defendant.