Parker, J.
This case is in this court upon appeal. The only facts brought to our attention are embodied in the “agreed statement of facts,’’ a part of which I shall read. This statement does not go as far as it should to give us all the light we ought to have upon the issues involved. It sets forth:
“First. That one Olivia Spaulding, at that time a resident of and domiciled in Ontario county, New York, some time prior to the 21st day of March, 1881, died, seized of the following lands:”
Describing lots 18 and 19 in Ketcham’s Division, otherwise known as Ketcham’s Addition to the city of Toledo, Ohio.
“Second. That said Olivia Spaulding died testate; that her last will and testament was duly probated in Ontario county, New York; that a duly certified copy thereof, together with a transcript of said proceedings in Ontario county, New York, duly certified, was on March 21, 1881, filed for record, and was duly recorded at page 328, in volume 7 of the Record of Wills in said Lucas county, Ohio, probate court.
“Third. That one William Stearns was thereafter, by the probate court of Ontario county, New York, duly appointed and qualified as administrator with the will annexed of said Olivia Spaulding; that long prior to the commencement of this action said Stearns died; that at the time of the death of said Stearns said estate had been fully administered, except only as to said lots mentioned in paragraph one hereof.
“Fourth. That on the--day of March, 1899, William O. Dakin, .defendant herein, was duly appointed and qualified as testamentary trustee in the probate court of Lucas *256 county, Ohio, of ihe said estate of said Olivia Spaulding,
“Fifth. That no proceedings whatever have been had in said Lucas county probate court except as hereinbefore stated; that no proceedings have been had in said Ontario county probate court in any wise relating to said lots hereinbefore mentioned; and at the time of the death of said William Stearns the said lots remained unsold.
“Sixth. That the will of Olivia Spaulding is as follows-It will be unnecessary to read more than the eighth and ninth paragraphs of this will.
“8. I give and bequeath to Jennie Dakin for and during her life time, the use of the avails of lots No. 18 and 19 of Ketcham’s Division, as appears upon a plat thereof on record in the recorder’s office in the city of Toledo, Ohio, said lots being situated in said city of Toledo, on the east side of the Maumee river; and it is my wish and I hereby direct that after the death of the said Jennie Dakin, a sum of not exceeding $300, be taken out of the moneys realized on the sale or disposal of said lots in the city of Toledo, and be used to defray the funeral expenses of the said Jennie Dakin, and that thereafter the remainder of said sum realized on the sale or disposal of said lots be given to the Protestant Orphans’ Home in Toledo Ohio, to be kept as a perpetual fund for that institution, the income only to be used for the benefit of said Home.
“9. I give, devise and bequeath all the rest, residue and remainder of my estate, both real and personal, to n y brother-in-law Elbridge Dakin his heirs and assigns forever. ’’
It is further stated in this agreed statement that Mary O. Dakin is the executrix of the will of Elbridge Dakin, deceased; and that Elbridge Dakin in his lifetime did pay,, and since his decease the plaintiff, as executrix, has paid as taxes upon the property mentioned, the sum of $31.35, and an assessment of $34.50; and further that on January 21, 1898, the plaintiff Mary O. Dakin, as executrix of the estate of Elbridge Dakin, deceased, executed an agreement in writing, a copy of which is given; but it is suffici°nt hire to say that it is an agreement whereby she, for a consideration of $450, to be paid her by H. B. Lecklider, agrees to convey these lots to him by warranty deed — to convey a good title; and it is agreed that he has made the cash payment of $25, provided for in this agreement, but that he has paid nothing more.
*257 Then comes the tenth stipulation:
“Tenth, That on or about the 8th day of January, 1898, the defendant, Harvey B. Leeklider, entered into a contract with one Frank Preo, defendant herein, whereby said Leeklider undertook to sell and agreed to convey said premises by good and sufficient warranty deed to said Preo upon the terms and conditions of $600, to be paid in said contract; that thereafter said Preo went into possession of said premises, but no conveyance thereof to him was in fact ever made; that while in possession thereof, and before any default upon the part of said Preo in the performance upon his part of said contract, said Preo undertook the construction of three(3) cottage dwellings upon said premises; that for the purpose of constructing said cottages, the defendants Doherty & Company, Henry C. Wasson, Edward J. Goulet and Myron A. Burger furnished the materials and performed the labor of the amounts, character and value, ■and at the times set forth in their respective cross-petitions herein; and thereafter duly filed said accounts with affidavits thereto in the office of the recorder of Lucas county, Ohio, and caused the same to be recorded in all respects as required by law for the purpose of obtaining mechanic’s liens-to secure said accounts, all as set forth in the respective cross-petitions of said defendants; that said Frank Preo, prior to the commencement of this action, abandoned said premises and removed to parts unknown.”
Now it appears from the statements of counsel, uncontradicted, and perhaps from the pleadings, that after the death of Olivia Spaulding, along about 1881, Elbridge Dakin went into possession of these premises, supposing himself to be the owner thereof under the clause of the will which makes him the residuary devisee of the estate of Olivia Spaulding; that he remained in possession of the premises up to the time of his decease, paying taxes as set forth in the agreed statement of facts. The property •during that time was vacant — no house upon it, and just what his possession was is not distinctly stated, though we presume it was such possession as might be taken of vacant property. Perhaps he cultivated it — we do not know; at all events it is agreed that he had possession, .and his executrix, after his decease, entered into this contract with *258 Lecklider, undertaking in good faith to convey the premise® to Lecklider, Whether Lecklider went into possession we are uncertain, but Lecklider made over his interest to Preo, and Preo did go into possession and began the erection of three-cottages. It is said they are not all complete — how near completion they are, is not stated. It appears from the will that as a matter of fact Elbridge Dakin acquired no-title to this property. This action in this court was begun-by Mary O. Dakin, executrix of the estate of Elbridge Dakin, to foreclose this contract as against Preo, and she makes parties defendant the persons who furnished material- and labor for the construction of the cottages, and Jennie Dakin- — who has a right to the proceeds or avails of this-property during her life time, the Protestant Orphans’ Home, of Toledo, Ohio — -which is to be given the avails less $300, (which sum is to be appropriated to the burial of Jennie Dakin after her decease), and perhaps some others, averring that they claim to have interests or liens upon the-property, and asking that they be required to come in and set up their interests or be forever barred.
It appears that after the action was begun William O. Dakin was appointed trustee under the will of Olivia Spaulding, deceased, and he was then made party defendant, and filed an answer and cross-petition stating what we understand to be the true facts as to this title, and asking that the property may be sold and the proceeds devoted to the uses and purposes provided in the will of Olivia Spaulding. The persons who furnished material and labor for the construction of these cottages took such measures-as were necessary to obtain mechanics’ liens upon whatever interest in the property Mr. Preo may have had, That they proceeded according to law to perfect their liens is undisputed, but their right' to have anything of the proceeds of the sale of this property — the fact that they acquired liens is disputed and contested here. The contention on behalf of the trustee and those who are united in interest with him is, that the contracts for labor and material were not made with the owner of the premises, and that therefore no lien could be acquired.
Section 3181 reads:
“A person who performs labor or furnishes machinery or *259 material for constructing, altering or repairing a house,by virtue of a contract with the owner or his authorized agent, shall have a lien to secure the payment of the same upon such house, and upon the interest, leasehold or otherwise, of the owner in the lot or land on which the same may stand, or to which it may be removed.”
It is contended that Elbridge Dakin had no title to any estate or interest in the land, and therefore he was not an owner who could enter into a contract with the builders of houses and enable them to procure a lien; but we think what is intended by the word “owner” in this section of the statute is indicated by the phrase that the builder may obtain a lien “upon the material and machinery so furnished, and upon the interest, leasehold or otherwise of the owner in the lot or land, etc.” It is quite apparent from the statute that the interest may be less than a fee simple estate — less than a freehold; and by numerous decisions, it may be at least as small as a leasehold,
I call attention to the cases of Choteau v. Thompson, et al., 2 Ohio St., 114; Dutro v. Wilson, 4 Ohio St., 101; O’Brien v. Meyer et al., 9 Bulletin, 337, and the case of Smith & Co. v. Woodruff et al., 1 Handy, 227.
Now it is said in the case of Paine, Kendall Co. et al. v. Masson et al., 7 Ohio St., 204, that the possession of land alone is a species of legal title, though the lowest species, and upon that subject I read briefly from Sedgwick & Waite on Trial of Title to Land, section 717. That Preo had obtained possession is a conceded fact in the case, and that his possession was a continuation of that of the person under whom he claimed, a possession continued from the spring of 1881 to January, 1899, is undisputed. It was a possession which might have within a very short time ripened into a perfect title. It was a possession which gave him a right to the occupation of the property as against all the world excepting the true owner. I begin to read about the middle of the section:
“It was held in Kansas that possession was a low degree of title, and descended to heirs, and such is the general rule. A debtor, as we have seen, may have a homestead in a possessory interest, and a naked possession may be sold at sheriff’s sale, and the purchaser has the right to recover *260 it in ejectment, and it can be taxed, Possession of land is prima facie evidence of the highest estate in the property, viz., a seizing in fee, and, as we shall see, is alone sufficient to support ejectment against trespassers or intruders. This is the general rule.”
Then follows a further discussion of the matter, Now, in our opinion, it involves such right and interest as makes the possessor an “owner” within the purview of section 3184, Revised Statutes. And the lien attaches to such interest and possession and right of possession, if such right exists. It is enough to meet the technical requirement of the statute that the contract for labor or material shall be the “owner.” The debtor himself would not be heard to deny that he was the owner if the effort were made as against him to foreclose these mechanic’s liens. Williams, Admr., v. Webb, Assignee, etc., 2 Disney, 430. Nor could he divest himself of such to any but an innocent purchaser for value, with the effect of defeating the lien. He could not abandon or surrender to another voluntarily and effect the result, unless the other could show a stronger equity than the lienor, O’Brien v. Meyer, et al., 9 Bulletin, 337. The mechanic’s lien attaches to any equitable interest in the land growing out of the melioration thereof by the debtor, and any right he may have under the statute protecting occupying claimants by assuring to them the value of lasting and valuable improvements. This claim for improvements is an equitable lien, and is treated as an interest in the land, 29 Pa, St., 415.
It is contended on behalf of those who assert the mechanics liens that a court of equity may, and ought in a case of this kind, to order an appraisal of the property in such a way as to have the house appraised separately from the land and the land separately from the house, ana then have the property sold and the fund divided pro rata; that is to say, the avails or fund arising from the sale of the house to be applied in satisfaction of the liens, and on the ground that under the statute the lien attaches to the house or structure as one thing, and upon the interest (if any)"of the debtor in the land as another thing, and that one of the results of this is to give the mechanic a lien on the house even if the debtor has no interest in the land, enforceable *261 against the house alone, and giving the lienor a right thereto superior to the right of the owner of the land; and in support of their contention that that may be done, we are cited to the case of Choteau v. Thompson, 2 Ohio St., 114.
It is not clear to as from that case that that can or ought to be done ordinarily by a court of equity. But here we have a situation of one in the quiet and peaceable possession of lands making lasting and valuable improvements upon them, giving him rights analagous to those worked out in law cases under the occupying claimant law, and creditors claiming rights and liens against and based upon such interest of the occupier and improver. Whether the owner of the fee or those being entitled to the avails upon the sale of the property, stood by and observed the going forward of these improvements, we are not informed. The pleadings are silent upon the subject snd the agreed statement of facts does not enlighten us. But the occupying claimant has a right to the value of lasting and valuable improvements without respect to the question of whether the owner of the fee so conducted himself as to be estopped; his equity does not arise out of the doctrine of estoppel.
It has been suggested that the interests of these lienors might be worked out through the statute on the subject of occupying claimants, Because of the relation of the parties and the nature of the action, ic is not apparent that the statute can be applied; but the statute had its origin in equitable principles borrowed from the Civil Law, and well established and enforced by courts of equity long before the enactment of the statute, and those principles and rules are not abolished or suspended by the statute. They may be given effect by a court of equity when a case is brought in that court in analogy to an application of the statute in an action at law. In such case it amounts to an application of the principle that one asking the intervention of a court of equity on his behalf may be required to do equity as a condition of the granting to him of relief. That this may be done, and has been done in Ohio, appears from the case of Bomberger et al. v. Turner, Admr., in 13 Ohio St., 263. I go to the opinion of Peck, J. which I think states the facts sufficienly so that the law laid down and its application to this case may be understood.
*262 “The action is a suit in equity, to subject lands, fraudulently aliened, to the payment of a judgment against the grantor, in the hands of the grantee’s heirs, who, as admitted by the demurrer, were ignorant of the fraud, and made the improvements innocently, while in possession of the premises.
“It would seem from this statement that the relief asked should have been granted in the same action, in analogy to the relief given in actions for the recovery of real estate., under the ‘act for relief of occupying claimants of land’. Equity had obtained jurisdiction of the parties and the subject matter, * * *. That this may be done, in such cases, by courts of equity, is well settled in this state. Henry v. Doctor, 9 Ohio Rep. 49; Salmond v. Price, 13 Ohio Rep. 369.
“It is true that the fraud of Bomberger, found by the court below, avoids the title cast by descent upon his heirs; but they are not charged with actual knowledge of the fraud, and are admitted by the demurrer to have made the improvements innocently, while in possession of the lot; and we are of the opinion that the fraud of the ancestor, of which they were ignorant when the improvements were made, should not deprive them of compensation for. their expenditures, especially where the laches of the creditor, as in the present case, left them for a series of years in possession of the premises, thereby inducing a belief that their title was indisputable.
“In our opinion, the demurrer to the additional answer should have been overruled, and the court, having found the transfer fraudulent and void, should have directed an investigation to ascertain the amount of the expenditures for which the defendant, Lowe, was thus equitably entitled to compensation; and this brings us to notice the decree pronounced by the superior court, to which exception is also taken.
“The decree orders a sale of the premises to satisfy the judgment, but ‘saves the right of defendants under the occupying claimant law,’ and directs an appraisement of the lot ‘free from improvements made thereon by said defendants. ’
“This decree is liable to several objections:
*263 “First. Even if it were a case to which the statute was, in terms, applicable, thé court, having possession of the cause, should have administered relief in pursuance of its-provisions; but the suit not being of that character, the-court should have granted the relief in analogy to the statute, and permitted the defendants to retain possession, until such relief was accorded.”
Another case in which a like doctrine is held, is that of Preston, Trustee, v. Brown, 35 Ohio St., 18, I will read but a single paragraph. Here it was apparent, and the court so holds, that relief could not be obtained by the one in occupancy of the premises who had made improvements-under the .occupying claimant law; that he did not come within the strict provisions of the statute:
“The right, however, of the defendants for remuneration for improvements which added an increased value to the-laud, involves other considerations. It is a rule of the common law, but subject to certain exceptions, that all erections or improvements made upon real estate become a part of the freehold, and the property of its owner.. Among the exceptions to the rule, are those that arise at law, under the act for the relief of occupying claimants, and under the act creating liens in favor of mechanics in certain-cases; and in equity, in particular cases, where the provisions of the statute do not apply. It also seems to be settled, that a bona fide occupant, sued by the owner of the-premises for rents and profits, may, at law, recoup the-value of the meliorations by him made while in the occupancy of the premises.”
His right is not limited to the setting off of the improvements against rents and profits; he may avail himself of the right where recovery of the land is sought, though rents- and profits be not claimed, and (as before remarked) the right is not founded upon estoppel in pais.
A very instructive case upon this subject, showing that rights simply depend upon the bona fides of the occupier and not upon the equitable doctrine of estoppel, but that compensation is allowed where there is no element of estoppel, is the case of Bright v. Boyd, found in voi. 1 of Story’s Reports, at page 478, and afterward a further consideration of the case upon the report of the referee, in. *264 2 Story, 605. From this last report I will read a paragraph, from the language of Judge Story:
“I have reflected a good deal upon the present subject; and the views expressed by me at the former hearing of this case, reported in 1 Story, R. 478 et seq., remain unchanged; or rather, to express myself more accurately, have been thereby strengthened and continued. My judgment is, that the plaintiff is entitled to the full value of all the improvements and meliorations which he has made upon the estate, to the extent of the additional value which they have conferred upon the land.
“It appears by the Master’s report, that the present value of the land with these improvements and meliorations is $1000; and that the present value of the land without these improvements and ameliorations is but $25; so that in fact the value of the land is increased thereby $975 This latter sum, in my judgment, the plaintiff is entitled to, as a lien and charge on the land in its present condition. I wish, in coming to this conclusion, to be distinctly understood as affirming and maintaining the broad doctrine, as a doctrine of equity, that, so far as an innocent purchaser for a valuable consideration, without notice of any infirmity in his title, has, by his improvements and ameliorations, added to the permanent value of the estate, he is entitled to a full remuneration, and that such increase of value is a lien and charge on the estate, which the absolute owner is bound to discharge, before he is to be restored to his original rights in the land. This is the clear result of the Roman law; and it has the most persuasive equity, and I may add, common sense and common justice, for its foundation.”
Now the case at bar is not an action to recover possession of the premises, but it is, as I have said, an action in the first instance upon the part of the executrix of Elbridge Dakin’s will to foreclose this contract with Preo, the claim of Elbridge Dakin or his executrix to any right in this land appears to be abandoned, and very properly so; so that now it is but a question between these mechanics who claim liens, and the owner of the fee; and both are seeking a sale of the premises, the lienors for the purpose of having their liens satisfied, and the trustee for the purpose of obtaining a fund in order that he may put it in the channel directed *265 by the will Therefore there cannot be an order made that the value of these improvements shall be paid by the owner before he shall dispossess one undertaking to hold possession ; but an order may be made which will protect the rights and interests of all the parties with respect to the fund arising from the sale of these premises. We are clear that the debtor, Preo, could not abandon nor relinquish his right in such a way as to prejudice the rights and interests of these creditors, and that the value of these improvements should be ascertained — how, we have not determined. Counsel may perhaps agree upon the value of the land and the value-of the buildings; or they may have it ascertained through an appraisement, if they chose; or, if that is not satisfactory to the parties, we may perhaps refer the case and allow testimony to he taken. Oi course, what is to be ascertained is, the added value to the lots. Not what the buildings cost, but how much more valuable the lots are in consequence of the buildings being erected upon them.
Delphey & Corbitt, H. S. Bunker, B. F. Reno, and W. J. Gill, for Mechanics’ Lien Holders.
Seney & Johnson, Smith & Baker, and Ira H. Lecklider, for Claimants of Lots.
I see but one of the counsel of the different parties in court, but, through the stenographer’s report, they will obtain knowledge of our conclusions in the case, and by one of the processes suggested, the court will undertake to arrive at the value of these improvements and allow the proceeds,in so far as they are the avails of the value of the improvements, to be applied in satisfaction of the mechanics’ liens.
The claim for taxes paid by Dakin and his executrix is the first lien upon the premises, and that should be paid from the avails of the land without respect to the buildings, for the reason that those taxes and assessments were all levied and paid before any buildings trad been erected upon the premises. The costs will be paid from the avails of both land and improvements.