**State v. Morrow**
*[Cite as 2 AOA 182]*

*Case No. 89 CA 4*
*Gallia County, (4th)*
*Decided April 12, 1990*

*R.C. 2305.04*
*R.C. 5303.08*

*Mr. William J. Damsell, Assistant Attorney General, Columbus, Ohio, for Appellant.*

*Mr. James D. McNamara, Columbus, Ohio, for Cross-Appellant.*

STEPHENSON, J.

This is an appeal, and cross-appeal, from a judgment entered by the Gallia County Court of Common Pleas, following a bench trial, which granted possession of certain real property to the State of Ohio, Department of Administrative Services, plaintiff below and appellant herein, contingent upon payment of $1,850.00 to Evelyn Morrow, hereinafter referred to as "Morrow", defendant below and cross-appellant herein. The court below ordered this sum to be paid to her before ejectment would issue.

The following errors are assigned by the State:

"*FIRST ASSIGNMENT OR ERROR*
THE TRIAL COURT ERRED IN DETERMINING THAT PLAINTIFF-APPELLANT'S COMPLAINT IN EJECTMENT IS AN EQUITABLE ACTION.

SECOND ASSIGNMENT OF ERROR
THE TRIAL COURT ERRED IN DETERMINING THAT DEFENDANT-APPELLANT IS ENTITLED TO COMPENSATION FROM PLAINTIFF-APPELLANT PRIOR TO RECOVERY OF THE PROPERTY BY PLAINTIFF-APPELLANT.

*THIRD ASSIGNMENT OF ERROR* THE TRIAL COURT ERRED IN DETERMINING THAT DEFENDANT-APPELLANT HAD IMPROVED PLAINTIFF-APPELLANT'S PROPERTY IN THE AMOUNT OF $1850.00."

The following errors are assigned by Morrow:

*FIRST ASSIGNMENT OF ERROR* THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT BY ENTERING AN ORDER OF EJECTMENT WHEN THE PROPERTY IN QUESTION BELONGED TO THE APPELLANT THROUGH ADVERSE POSSESSION.

*SECOND ASSIGNMENT OF ERROR* THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY REFUSING TO APPLY THE LEGAL PRINCIPAL OF COLLATERAL ESTOPPEL TO DENY THIS REQUEST FOR EJECTMENT."

The facts pertinent to this appeal are as follows. In 1971, Morrow and her husband purchased a parcel of real property located adjacent to Burnette Road in Gallia County, Ohio.[1] At trial, Morrow testified that she had been familiar with the property long before its purchase and had known the people who resided there during the nineteen forties. Additional testimony was adduced concerning structures and monuments located on, or around, the property during the nineteen thirties and forties.[2]

The aforementioned real property is bordered on the east by a fourteen acre parcel owned by the state. Though no direct testimony on the issue was provided at trial, both parties concede in their briefs that the property was purchased by the state in 1969[3] and, therefore, before Morrow purchased her one acre parcel in 1971.

At some time during 1972 or 1973, Morrow acquired a mobile home as a residence for her son. It is unclear from the record whether this initial mobile home was placed on the real property owned by Morrow or that owned by the State. However, additional mobile homes and other structures were subsequently added which are shown, by the surveys, to clearly encroach upon a strip of land on the fourteen acre parcel owned by the state. In addition to these, Morrow also installed water and electrical lines, septic tanks and other improvements on the disputed strip of land.

In 1984, the state, in anticipations of a possible sale of the fourteen acre premises, conducted a survey of its land. Ronald Easton, a registered surveyor, completed the survey, a copy of which was introduced at trial below as exhibit one. In constructing the survey, Mr. Easton testified that he had a copy of the deed by which Morrow took title to her one acre parcel. Mr. Easton further provided the following uncontroverted testimony that there was a discrepancy in the legal description of Morrow's deed which would increase the size of her land:

"Q. * * * Was there any discrepancy between the description of Mrs. Morrow's property contained in her deed and the description of the State of Ohio's property in State of Ohio's deed as to the boundary in question today?

"A. Well, the east line.. there would be a mention in Mrs. Morrow's deed.. I believe her deed would be short by about five feet from north to south. In other words, her deed has a certain distance in it and the distance is actually... on the ground ... is actually increased by about five feet.

"Q. And that is on the east line; is that correct?

"A. Yes, sir, the boundary of the State of Ohio."

The 1984 survey, exhibit one below, reveals a mobile home, a camping trailer, various sheds and septic tanks encroaching upon the fourteen acre parcel. Despite the knowledge that someone was trespassing on its land, the State of Ohio took no formal action to remove the responsible party until a complaint in ejectment was filed in Franklin County, Ohio on October 7, 1987.

On March 2, 1988, the Franklin County Court of Common Pleas sustained Morrow's motion for a change of venue and ordered the case transferred to the court below. In her answer to appellant's complaint, Morrow raised the defenses of adverse possession, laches, waiver and estoppel.

At trial, appellant produced an updated 1987 survey that revealed additional encroachments on its land. On February 6, 1989, the court below entered the following judgment:

"It is hereby ORDERED that the State of Ohio be granted possession of the subject property free of the encroachments of the defendant within 60 days of the date of this entry. It is further Ordered that Defendant, Evelyn Morrow be awarded $1,850.00 against the State of Ohio to be paid prior to the State receiving possession of the property. . . . In the event that the State of Ohio refuses payment of the $1,850.00 then their demand for ejectment

is denied and the case is dismissed with costs to the plaintiff."

In its first assignment of error, the State takes exception to that part of the judgment below which characterizes the action as an "equitable" one. The State argues that an action in ejectment is possessory in nature. The State is correct in its argument in that an action in ejectment is, essentially, a possessory action at law. See *Hinton v. McNeil* (1832), 5 Ohio 509, 512; *Maddox v. Reser* (1959), 110 Ohio App. 213, 216; 37 Ohio Jurisprudence 3d (1982) 13, Ejectment, Section 2. Therefore, the court below was technically in error by classifying the relief sought as being equitable in nature. However, the State has not demonstrated any prejudice resulting from such technical error and we cannot determine any. In that an assignment of error cannot be sustained without a showing of prejudice, see e.g. *Covington v. Sawyer* (1983), 9 Ohio App. 3d 40, 44; *McQueen v. Goldey* (1984), 20 Ohio App. 3d 41, 44; *Tirpak v. Weinberg* (1986), 27 Ohio App. 3d 46, 51, the State's first assignment of error is overruled.

In its second and third assignments of error, the State argues that the trial court erred in determining both entitlement to, and amount of, the compensation awarded to Morrow. These assignments of error will be jointly considered.

Appellant argues, inter alia, that the compensation award given to Morrow was apparently based on a theory of quasi contract because the court below did not articulate the legal basis for the compensation awarded. Appellant continues that, under the holding of *Wendover Rd. Property Owners Assn. v. Kornicks* (1985), 28 Ohio App. 3d 101, any benefit bestowed by Morrow upon the state was officious and unsolicited and, therefore, she is not entitled to restitution. We disagree with the State's analysis of the issue.

The complaint, in *Wendover*, proceeded on a theory of unjust enrichment. No such theory is discernible from the pleadings in the cause sub judice. Rather, the State's action is for ejectment. The law of unjust enrichment was neither advanced nor applied below as it was in *Wendover*.

Moreover, the decision in *Wendover* was based upon that court's application of sections 2 and 112 of the Restatement of the Law, Restitution (1937). Both of these sections, and the comments that follow, specifically exclude those situations where benefits are conferred upon another by mistake. See *Id.* at 15-16 (Section 2) and 461 (Section 112). The court

below, having found that Morrow was under a "good faith reasonable belief" as to her ownership of the disputed strip of land, could not have applied the same analysis herein.

Furthermore, we note that recovery by Morrow could not be had under the occupying claimant statute. R.C. 5303.08 provides, inter alia, as follows:

"A person who, without fraud or collusion on his part, obtained title to and is in the quiet possession of lands or tenements, claiming to own them, shall not be evicted or turned out of possession by any person who sets up and proves an adverse and better title, until the occupying claimant, or his heirs, is paid the value of lasting improvements made by the occupying claimant on the land, or by the person under whom he holds, before the commencement of suit on the adverse claim by which such eviction may be effected, * * *"

Payment for lasting improvements, under the foregoing statute, can be awarded only if the occupying claimant acquired title to the disputed premises in a manner designated by the statute.[4] Because there was no finding that Morrow had ever acquired title, and because adverse possession is not listed as an acceptable manner of acquiring title under R.C. 5303.08, the compensation award to her could not properly have been made on this basis.

Rather, it would appear that the court below relied on rules of equity which were invoked by Morrow's raising of the equitable defenses of waiver, laches and estoppel. Even in circumstances where the occupying claimant statute does not apply, equity has, historically, been permitted to ameliorate the harsh effect of the general rule of common law that improvements upon real estate became a part of the freehold and the property of its owner. *Preston v. Brown* (1878), 35 Ohio St. 18, 28; *Dakin v. Lecklider* (1899), 10 Ohio C.D. 308, 314. In *Preston*, the Ohio Supreme Court reviewed the following circumstances which warranted remuneration to adverse claimants for permanent improvements:

"It is a familiar rule, which a court of equity always enforces, that if an owner of an estate stands by and suffers another, acting in good faith and without notice of his title, to place improvements thereon, which add permanent value to the estate, such improvements will constitute a lien thereon. * * *

"The doctrine proceeds upon the principle, that one person will not be permitted, in equity,

to enrich himself by the loss or at the expense of another, when the loss would have been avoided had the former acted honestly and in good faith. His silence, in such case, is tantamount to a fraudulent concealment of his title, and to the extent that the party in possession has been thereby misled into the making of improvements that he otherwise would not have made, a court of equity grants relief by charging the value of the improvements as a lien upon the estate to which they have been added." *Id.* 28.

In the case at bar, Morrow was found to have been under a "good faith reasonable belief" that she was the owner of the disputed strip of land upon which she built the improvements. Further, the State was found to have knowingly allowed her to occupy and improve the land during the four years prior to the present ejectment action being brought. Thus, had the record owner been other than the State of Ohio, the compensation award would have been proper under the principles set forth in *Preston, supra.*

The *Preston* and *Dakin* cases, however, both concern record owners other than the State. Therefore, the dispositive issue is whether such an equitable award could be made against the State. Though we can find no reported cases directly on this issue, the question has been considered in the context of an "occupying claimant" analysis. In *Huber v. Gazley* (1849), 18 Ohio 18,27 and *Gazley v. Huber* (1854), 3 Ohio St. 400, 405, the notion of an equitable award against a town for improvements made to a public square was soundly rejected. In affirming the previous holding in the case, the Supreme Court, inter alia, stated as follows:

"[W]hen we remember that the origin of the provisions of our statute for the benefit of occupying claimants was in purely equitable principles, and that those provisions were made in order that the successful claimant should not have the *benefit* of improvements without paying for them, we must allow that the court was warranted to deny compensation for *erections on this public land, which could not be of public benefit.*" (Emphasis added)

This same principle remains intact under current law and, therefore, there can be no recovery, under the occupying claimant law, by one who is in wrongful possession of public lands and, thereafter, erects improvements upon them which are of no benefit to the public. 72 Ohio Jurisprudence 3d (1987) 513, Occupying Claimants, §48. Since the occupying claimant law originated from the very same equitable

principles which gave the value of the improvements to the adverse claimant, *Gazley*, supra at 405, a court, in equity, can enforce the principles of the occupying claimant law by analogy. *Penrod v. Danner* (1850), 19 Ohio 218. Therefore, we hold that by analogy to *Huber* and *Gazley*, supra, an equitable award cannot be made against the state in favor of an adverse claimant.

Finally, if the compensation award to cross appellant was sustainable, the proper amount of such award would have been the value of the improvements. *Preston*, supra at 84; *Also see McCoy v. Grandy* (1854), 3 Ohio St. 463, 468. The trial court was, therefore, correct in fixing the compensation award at $1,850.00 which was found to be the reasonable value of the improvements made by Morrow. Such a value is supported by competent credible evidence, See *Morris Co. v. Foley Construction Co.* (1978), 54 Ohio St. 2d 279 at the syllabus, and we therefore overrule the State's third assignment of error. As stated previously, however, such an award cannot be made against the State of Ohio. Accordingly, the State's second assignment of error is sustained.

We now turn to consider Morrow's first assignment of error which is, in substance, that the trial court erred in failing to hold that she had acquired the disputed strip of land by adverse possession. We note that the judgment entry is silent as to the issue of adverse possession and no findings of fact were requested, or made, regarding the elements necessary to sustain that claim.

The State argues, and the record suggests, that the defense of adverse possession was rejected because such defense cannot be applied against the State of Ohio. While that may be a correct statement of the law, see *Hernik v. Director of Highways* (1959), 169 Ohio St. 403, it, nevertheless, is irrelevant to Morrow's argument. Morrow is *not* contending that she acquired the disputed strip of land from the State of Ohio by adverse possession. Rather, she argues her *predecessors in title* acquired the disputed strip of land, by adverse possession, from those who owned it prior to the state.

The validity of such an argument depends upon when title to land, adversely possessed, divests from the record owner and vests in the adverse possessor.

For the reasons that follow, we believe that, if the evidence supports a finding on the required elements, that Morrow's argument is meritorious.

Generally, the authorities agree that "[t]itle to property acquired by adverse possession matures into an absolute fee interest *after the statutory period has expired*." (Emphasis added) 7 Powell, Real Property (1989) 91-77, par. 1017. At the same time, the true owner is divested of his estate in the property. In *McNeely v. Langon* (1871), 22 Ohio St. 32, 37, the Supreme Court described possession of land as a species of title which, by lapse of time, becomes "perfect and indefeasible."

In order to establish adverse possession in Ohio, a claimant must establish possession of land that was open, notorious, exclusive, adverse, hostile and continuous for more than the twenty one year statutory period of R.C. 2305.04. *Demmit v. McMillan* (1984), 16 Ohio App.3d 138, 140. Therefore, if Morrow can establish these elements for the requisite time period, then title to the disputed strip of land divested from its owner after the twenty one year period had run. After that time, all title, but record title, would have become vested in those who owned the one acre premises prior to Morrow.[5] In other words, if the elements of adverse possession were found to exist for more than twenty one years prior to the State acquiring record title to the fourteen acre parcel, then actual title to the disputed strip of land was never conveyed to the State as it had been divested from the State's grantor.

However, we are unable to determine whether this, in fact, happened from the record presented us. Of course, Morrow and witness, Evelyn Rothgeb, presented testimony as to uses of the land dating as far back as the 1930's. No testimony, or other evidence, was produced by the State to refute this. But the record is unclear as to whether these "uses" occurred on the disputed strip of land or on the one acre parcel. Further, we are without the benefit of the view of the premises enjoyed by the court below. Thus, we are unable to rule on whether the elements of adverse possession were met for more than twenty one years.

As a final note, we would observe that the doctrine of adverse possession will apply equally to the individual who honestly enters and holds possession of land in the honest belief that he is the owner as well as to the individual who knowingly appropriates the land of others for the purpose of acquiring title. *Yetzer v. Thoman* (1866), 17 Ohio St. 130 at the syllabus; *Vanasdal v. Brinker* (1985), 27 Ohio App. 3d 298, 299. Accordingly, cross-appellant's "good faith reasonable belief" that she was the owner

of the disputed strip of land is irrelevant for purposes of determining acquisition by adverse possession.

As previously mentioned, the trial court did not address the issue of adverse possession and we are unable to determine, on the record before us, whether the elements of adverse possession were met as a matter of law with regard to the disputed strip of land. Further, the determination of the credibility of witnesses and the weight of their testimony is a matter to be resolved by the trial court, Therefore, we cannot sustain Morrow's first assignment of error wherein she claims she is entitled to judgment as a matter of law.

Because there is probative evidence in the record on the adverse possession issue, we believe justice can best be done by granting a new trial limited to such issue and remanding for proceedings on that issue in which the court may consider the evidence already in the record and such additional evidence the court deems necessary. See Civ. R. 59(A). For these reasons, Morrow's first assignment of error is sustained to the extent of a partial new trial on the adverse possession issue wherein the court, after remand, should adjudicate the adverse possession issue consistent with this opinion and enter a new judgment.

In her second assignment of error, Morrow argues that the court below erred in not applying the doctrine of equitable estoppel to bar the ejectment action. We disagree.

While there are few reported decisions on this issue, we believe the law in Ohio to be that equitable estoppel will not defeat an ejectment action brought by the State. *State v. Lake Shore & Mich. S. R.* (1985), 1 Ohio N.P. 292, 293. Such a ruling is logically consistent with the principle that adverse possession will not run against the State of Ohio. See *Hernick*, supra at 403. Were we to rule otherwise, then the principle would be easily circumvented by the adverse claimant improving the adversely held land and then using a plea of equitable estoppel rather than adverse possession. We are not persuaded that the name given to a defense is more important than the end result.

Accordingly, Morrow's second assignment of error is overruled.

This case is remanded to the trial court for further proceedings in conformity with this opinion.

*Judgment reversed and cause remanded.*

ABELE, P.J., Concurs In Judgment & Opinion:
HARSHA, J., Concurs In Judgment:

Case No. 1806
Scioto County, (4th)
Decided April 12, 1990

R.C. 2505.02
Civ. R. 54(B)
Civ. R. 56

Kimble, Stevens, Young, Clark & Rodeheffer, Mr. Stephen Rodeheffer, Portsmouth, Ohio, for Appellants[1]

Crabbe, Brown, Jones, Potts & Schmidt, Mr. Vincent J. Lodico, Columbus, Ohio, for Appellee Stephen Appleton, M.D.

McCurdy, Johnson, Ruggiero, McKenzie & Bender, Mr. Daniel P. Ruggiero,, Portsmouth, Ohio, for Appellee The Mercy Hospital Corporation.

[1] In the transcript, several witnesses refer to this parcel as encompassing one acre. We assume this to be correct. The surveys introduced below do not define the acreage owned by Morrow. Furthermore, the record does not contain copies of deeds to the lands at issue herein. Therefore, we are guided only by the testimony of the witnesses and the two surveys.

[2] Testimony from both Morrow and a witness, Evelyn Rothgeb, provide evidence concerning a building foundation, the house which presumably once sat on the foundation, and a decaying fence line. While the court below had the benefit of a view of the premises, we are unable to locate the position of these monuments on the survey. While the survey does refer to a water well, we are unable to determine if this is the same well referenced by Morrow. Similarly, while surveyor Ronald Easton did testify that a fence line ran along the northern boundary of the property owned by the State, we are unsure whether this is the same fence referred to by Morrow. Thus, our problem is that we cannot determine, from the record, whether these monuments encroached upon the disputed strip of land.

[3] The Department of Administrative Services of the State of Ohio is the office designated, by law, to acquire all real estate required by the State government, or any department, office or institution thereof. R.C. 123.01(A)(6).

[4] In order for the statute to apply, the adverse claimant must claim title in one of the following ways:

"(A) Under a plain and connected title, in law or equity, derived from the records of a public office;

(B) by deed, devise, descent, contract, bond, or agreement, from and under a person claiming a plain and connected title, in law or equity, derived from the records of a public office, or by deed authenticated and recorded;

(C) Under sale on execution against a person claiming a plain and connected title, in law or equity, derived from the records of a public office, or by deed authenticated and recorded;

(D) Under a sale for taxes authorized by the laws of this state;

(E) Under a sale and conveyance made by executors, administrators, or guardians, or by any other person, in pursuance of an order or decree of court, where lands are directed to be sold."

[5] After title became vested in those who owned the premises prior to Morrow, such title would have passed during subsequent, mesne, conveyances to Morrow even though the deeds contained no description of the disputed strip of land. See Paulken v. Rose (1943), 31 Ohio Op. 260, 261; Sinclair Refining Co. v. Romohr (1953), 95 Ohio App. 93.