TIEFEL ET AL., APPELLANTS, v. GILLIGAN, GOVERNOR, ET AL., APPELLEES. ▌

[Cite as Tiefel v. Gilligan (1974), 40 Ohio App. 2d 491.]

(No. 73AP-492—Decided May 21, 1974.)

*Mr. Richard Harold Slemmer,* for appellants.
*Mr. William J. Brown,* Attorney General, *Mr. Thomas V. Martin, Mr. George C. Smith,* prosecuting attorney, *Mr. Daniel M. Hunt, Mr. James J. Hughes, Jr.,* city attorney, and *Mr. Dale Crawford,* for appellees.

TROOP, P. J. A notice of appeal, filed December 26, 1973, indicates an appeal from a judgment of the Court of Common Pleas of this county entered November 28, 1973. The trial court granted a summary judgment in favor of the defendants, at the plaintiffs' costs. The trial court summarizes the action of the plaintiffs and the basis of the result reached in its formal entry, as follows:
"Plaintiffs challenge the validity of the Ohio Income

Tax, Chapter 5747 of the Revised Code. They seek a declaratory judgment that the Income Tax is unconstitutional under the Constitution of Ohio and the Constitution of the United States; a permanent injunction restraining defendant Tax Commissioner from enforcing the provisions of the Income Tax; a refund of all taxes collected; and damages from each of the defendants.

"Upon consideration the Court, for the reasons set forth in the Decision filed herein on October 16, 1973, finds that there is no dispute as to any material fact; that reasonable minds can come to but one conclusion and that conclusion is adverse to plaintiffs; and that defendants are entitled to a judgment as a matter of law."

A lengthy "decision" of the court, filed October 16, 1973, sets out the reasoning of the court and indicates the authorities upon which the court relied. The completeness and quality of the trial court's discussion recommends careful reading. It makes voluminous comment by this court unnecessary.

The complaint in this case was initiated by two married couples on their own behalf and as representatives of a class. They sue as individuals and as married persons, electors, taxpayers of Ohio and the United States and as individuals residing in Ohio, or earning or receiving income in such state. The defendants are officers of the state of Ohio, Franklin County, and the city of Columbus.

The complaint filed alleges 22 separate "claims." The "demand for judgment" seeks a number of different forms of relief. Plaintiffs seek a preliminary injunction enjoining the defendants from enforcing R. C. Chapter 5747, which is titled "Income Tax." The trial court is asked for a declaratory judgment finding that Chapter 5747 imposes a capitation tax in violation of Section 1, Article XII of the Ohio Constitution and is therefore void. A broad basic claim of unconstitutionality is reiterated as to multiple facets of the claim, and the argument is made that the tax conflicts with other state and federal laws and rules, and offends several constitutional provisions of the Ohio and federal Constitutions.

A permanent injunction is sought as a part of a final order and judgment, as well as an order requiring the restitution of property unconstitutionally taken and money damages for injuries, as indicated in claims numbered 9, 10, 11, and 12. Other relief sought is expense money for the plaintiffs as representatives of a class, and "other relief as may be proper."

Plaintiffs, the appellants herein, list 12 formal assign- ments of error. This detailed presentation of assignments of error seems so formidable as to deny any attempt to simplify. However elaborate, two fundamentals emerge. Plaintiffs say that the awarding of a judgment favorable to the defendants, by way of summary judgment procedures, was error and that the Ohio income tax law is unconstitutional and not to so hold was error. If these two indicated errors are not all inclusive, they are sufficiently fundamental that, if sustained, they become conclusive.

This review moves to a consideration of these two fundamental contentions. Plaintiffs urge that there are procedural errors and omissions fatal to the summary judgment granted by the trial court, and if the summary judgment should survive these procedural frailties, the judgment itself is contrary to law.

The motion for summary judgment filed in this case on June 27, 1973, by counsel for the defendants, is predicated on the claim of "no issue as to any material facts," to which was added the further claim that "the action has no real merits and defendants are entitled to judgment as a matter of law."

Plaintiffs claim that the trial court operated under the provisions of R. C. 2311.041, which is no longer effective having been superseded by Civ. R. 56.

It is noted that the motion for a summary judgment was made by the defending parties, and as such they were subject to the provisions of Civ. R. 56 (B), the pertinent part of which reads as follows:

"A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may at any time, move with or without supporting affidav-

its for a summary judgment in his favor as to all or any part thereof. However, if the action has been set for pretrial, a motion for a summary judgment may be made only with leave of court."

Defendants did not answer the complaint of the plaintiffs, but chose to move for a summary judgment "at any time" and without supporting affidavits. The motion was filed before "pretrial." Subparagraph (B), used by these defendants, changes the color of the motion for summary judgment, because it is not predicated upon a claim that there is no genuine issue of a material fact, except that the facts claimed by complainants are admitted by defendants, but is based solely on the claim that movants are entitled to a judgment as a matter of law. No answers having been filed by the defendants, there are no issues made up by the pleadings; the practical result of choosing not to answer amounts to an admission of the validity of the facts alleged by the complainants. Such procedural situation has the color of a case in which there was a request for judgment on the pleadings as authorized by Civ. R. 12 (C). The defense, by its motion for a summary judgment, in effect, "closed" the pleadings and brought its motion within the purview of Civ. R. 56 (B), rather than Civ. R. 56 (C). It is more correctly put, however, to say that facts alleged by plaintiffs stand undisputed.

The facts alleged by plaintiffs being undisputed, the question for the court is whether those facts entitle the moving parties to a judgment as a matter of law, just as the question would be presented by a motion for a judgment on the pleadings, or a demurrer, under common law pleading.

Plaintiffs contend that Civ. R. 58 requires an "Entry of Judgment" and that a judgment is not effective unless so designated. The rule directs that the trial court shall promptly enter the judgment and that it becomes effective only upon journalization. Nothing in the language of the rule appears to require a trial court to head its entry using the term "Judgment" or "Judgment Entry." Even conceding such a heading to be desirable, or preferable, Civ.

R. 58 simply states that the trial court is to cause "the judgment to be prepared," which was done in this case, "announced" and "filed" with the clerk of the court. In the entry here scrutinized, we find this language: "Summary Judgment is, therefore, granted in favor of defendants at plaintiffs' cost." This is the judgment, whatever the label used on the document. It is not altered, diminished, or changed in any way by being included in a document titled "Judgment Entry." Plaintiffs' assignments of error numbered 1, 3, 4 and 5 are not well taken.

As introductory to the more compelling question of the constitutionality of the Ohio income tax law, plaintiffs urge that the summary judgment granted by the trial court was erroneous for the reason that, when considered separate and apart from the "independently stated Fifth Claim," the judgment was in conflict with federal decision law, and further that R. C. 5747.02 "does not lawfully impose a tax."

Counsel for plaintiffs argues that the Ohio tax law fails to respect the two essentials of any valid tax. Specifically, says counsel, the valid tax must identify the specific "property," or "thing" taxed and the specific basis upon which the tax shall be computed and, secondly, the further requirement is that "someone" shall pay the tax.

The argument moves then to assert that the Ohio law is unconstitutional, being vague and indefinite, "because it does not specify *whose* adjusted gross income is being measured," except that it will be done by the tax commissioner as required in a related section.

R. C. 5747.02, the section claimed to be vague and indefinite, outlines the purposes of its enactment and states, in part:

"* * * there is hereby levied on every individual residing in or earning or receiving income in this state an annual tax measured by adjusted gross income * * *."

A variety of suggested hiatuses, or blank spots and other frailties, comes from counsel for plaintiffs as illustrative of the "vague and indefinite" quality of R. C. 5747.-02, among them the question as to *whose* adjusted gross in-

496

come is being measured and by whom, as noted above. Amplifying, counsel contends that the law applies the tax "to the *individual* in one breath, and does not *designate* the income(s) in the other breath." R. C. 5747.02 states that the tax is "* * * levied on every individual residing in or earning or receiving income in this state." Such statement, in the *same breath,* levies the tax on the individual measured by his income earned or received in Ohio. There is nothing vague or indefinite about that statement.

Counsel goes on to urge that the individual is not required to *actually pay* the tax. Such argument completely ignores the import of R. C. 5747.06, the withholding provision of the law, making it mandatory that an employer deduct the amount of the tax in periodic installments from the employee's pay. It seems clear that the individual pays. R. C. 5747.09 requires the use of an estimated return, a device by which the taxpayer, himself, decides and divulges what he anticipates will be paid through payroll deduction or by a direct remittance. If the employer or taxpayer appears to avoid the payment of the tax obligation, R. C. 5747.14 provides procedures for the collection of the tax indebtedness, some of which are peremptory in character. These sections make it abundantly clear whose income is involved and who pays, as well as the ways by which he can and must pay.

Counsel contends that the "tax" levied on every individual is, in effect, a capitation, or poll tax. It is true that the tax is levied on "every individual," but only if he resides, earns or receives income in this state, and only if his adjusted gross income is greater than $500. A sufficiently substantial portion of the citizens of Ohio, children with no income, and adults with limited income will not pay an income tax, whereas a head or poll tax would reach a portion, or all of that group.

The most potent portion of plaintiffs' attack on the Ohio law relates to R. C. 5747.08 (E) and, although counsel mentions it in connection with the contention here discussed, that the law is vague and indefinite, it is essentially segregated, being the nub of plaintiffs' "fifth claim," and

will be discussed more fully in the consideration of the claim of unconstitutionality as presented generally.

At this point, plaintiffs' assignments of error 6 and 7, as viewed independently of their "fifth claim," and assignment of error 8 are found to be not well taken.

The constitutionality of R. C. 5747.08 (E), together with any other objection based on constitutionality raised by plaintiffs' remaining assignments of error, along with the general objection raised in assignments of error 6 and 7, are now the concern of this discussion.

As an introduction to this portion of this review, a brief survey of some fundamental rules applicable in this instance, stated by textwriters, may be of some help. In 10 Ohio Jurisprudence 2d 227, Constitutional Law, Section 151, we find this generalization:

"In consequence of the general presumption in favor of the validity of legislation, the burden of showing the unconstitutionality of a statute or ordinance is upon the one challenging its validity. The proof of unconstitutionality must be clear and beyond a reasonable doubt."

At page 232, Section 154, the textwriters state:

"A cardinal principle, in determining the validity of legislation, is that the constitutionality of a statute or ordinance depends upon its operation and effect, and not upon the mere form it may be made to assume. The substance of an act, rather than its form, is of significance. In other words, the validity of a legislative enactment is to be resolved by its practical operation and not by its title or declared purpose.

"If a legislative act does not override or interfere with the purpose and object of a constitutional limitation it is not in conflict therewith and therefore not invalid."

At the risk of making an oversimplification, it is suggested that the sensitive question raised here, by the plaintiffs' fifth claim and by assignments of error 6, 7, 9 and 10, is a question of the validity of a legislative classification. 10 Ohio Jurisprudence 2d *supra* at 710, Section 656 bears on this matter, stating:

"In order to constitute uniformity of operation, it is

not necessary that the law shall operate upon all citizens; a statute is general and uniform, within the requirements of the Constitution, if it operates equally upon every person and locality within the circumstances covered by the act, and when a classification has a reasonable basis it is not invalid merely because not made with exactness or because in practice it may result in some inequality. The classification must not be arbitrary, artificial, fictitious, or evasive, used to circumvent the constitutional requirement of uniformity, but must be based on a real and substantial distinction in the nature of the class or classes upon which the law operates. The true practical limitation of the legislative power to classify is that the classification shall be upon some apparent natural reason—some reason suggested by necessity, by such a difference in the situation and circumstances of the subjects placed in different classes as suggests the necessity or propriety of different legislation with respect to them.

"Whether or not a particular classification is authorized by the Constitution is for the courts to determine. The court will not invalidate a plan of classification adopted by the legislature unless clearly arbitrary and unreasonable."

In further point as to classifications, see 11 Ohio Jurisprudence 2d 10, Constitutional Law, Section 671, as follows:

"Classification is an inherent right and power in the legislature, and the constitutional guaranty of equal protection of the laws does not dispense with all classification. Neither the state nor federal constitutional provisions guaranteeing equal protection of the laws deprives the Ohio General Assembly of a broad power of classification and differentiation of persons and subject matter in legislative enactments. Constitutional provisions against discriminatory laws do not require laws to apply to everyone within the state and to affect all in an identical manner."

At page 15, Section 673, there is this further proposition:

"The equal protection clause of the Federal Consti-

tution indulges neither technical distinctions or subtle nice-
ties. This guaranty does not cover every little inconveni-
ence which may be distorted or reasoned into a seeming in-
equality, but has reference rather to cases in which it is at-
tempted by statute to grant rights or privileges to some
which are withheld from others in the same substantial sit-
uation or relation. If a classification has a reasonable basis
it is not invalidated merely because not made with exact-
ness or because it may result in some inequality. Unattain-
able exactness is not required in classification. The fact
that there is no mathematically precise line that can be
drawn between two classes is no justification of judicial in-
validation of a practical line drawn by legislators."

Plaintiffs suggest, in assignment of error 2, that R. C.
5747.08 (E) creates and tolerates an invidiously uncon-
stitutional classification and discrimination, and that the
defendants have failed to justify that invalidly unconsti-
tutional classification and discrimination, having fallen
short of demonstrating a "compelling interest" on the
part of the state sufficient to sustain the use of that classi-
fication and the discrimination incident thereto.

Recent decision law indicates judicial acceptance and
approval of these pronouncements as to basic law. The
Supreme Court in *State, ex rel. Burton,* v. *Greater Ports-
mouth Growth Corp.* (1966), 7 Ohio St. 2d 34, at 37, had
this to say:

"The ultimate question in any classification problem
is whether it has some reasonable basis, not whether some
were excluded from such class who might well have been
included therein."

A decision issued by the United States District Court
for the Northern District of Ohio, in *Howe* v. *Brown* (1970),
30 Ohio Misc. 19, 21, quotes Chief Justice Warren of the
United States Supreme Court, in *McGowan* v. *Maryland*
(1961), 366 U. S. 420, 425, which the District Court adopts
and approves, as follows:

" 'Although no precise formula has been developed,
the court has held that the Fourteenth Amendment permits
the states a wide scope of discretion in enacting laws which

affect some groups of citizens differently than others. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the state's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.' ''

Our own Ohio Supreme Court spoke concerning the classification of school employees, in *State, ex rel. Soller,* v. *West Muskingum Bd. of Edn.* (1972), 29 Ohio St. 2d 148, 151, in language related to a specific statute, as follows:

"In the present case, the statute affects all similarly situated in the same manner, and, in view of its object and purpose, the distinction between those with three years of employment and those with less than three years of employment, as of November 24, 1967, is neither arbitrary nor unreasonable."

To move more specifically to other errors assigned, attention is directed to plaintiffs' fifth claim, and its concern with the constitutionality of R. C. Chapter 5747, generally, and of 5747.08 (E) particularly.

If there be a nub, or focal point from which emanates the many faceted complaint filed by these married couples, it must be found in R. C. 5747.08 (E). As counsel develops his critique of that section, he calls attention to the fact that the Internal Revenue Code *permits* married couples to enjoy the convenience of filing a single income tax return to which a separate rate structure is applicable. Inequities arise under the Ohio income tax statute, first because married couples who file a joint federal return *must* file jointly in Ohio. Ohio provides no separate rate structure to offset the higher tax liability resulting from the aggregating of incomes, which reaches totals taking the taxpayer into higher brackets in the single graduated scale which is applied.

Granted that such inequity, produced as to certain married taxpayers, is unjust and undesirable, and that the General Assembly should respond with corrective legislation, but does such an abrasive result of the existing law require

this court to declare that section, or the entire income tax law, as plaintiffs go so far as to suggest, unconstitutional? Conceding the irritating quality of the section is one thing, but declaring the act, or even the section in question unconstitutional is another and a much more devastatingly disastrous matter.

The legislature, as a part of the newly contrived state income tax, authorized by Article XII, Section 8 of the Constitution, chose to create a particular class of income taxpayers consisting of married persons, husbands and wives. If such classification can be said to be an invidiously unconstitutional classification, not offset by a compelling interest on the part of the state, there would be no choice for this court; it would be necessary to find the act of the legislature unconstitutional.

The adjective ''invidious'' has a damning tone suggesting the unpleasant, and is objectionable to the point of being injurious. It even implies the obnoxious, or even hateful. When used to describe legislation, the inference is that the law is politically selfish, reaching the level of detestable.

A good example of the invidious is supplied by the case of *Shapiro* v. *Thompson* (1969), 394 U. S. 618, concerning a statute requiring one year's residence to qualify for welfare assistance. The Supreme Court said it was invidious because it created two classes of needy resident families which were indistinguishable. The classification was prompted by the selfish purpose, as was suggested, to keep the influx of the poor out of the state.

*Allied Stores of Ohio, Inc.,* v. *Bowers* (1959), 358 U. S. 522, is a ''tax'' case. It involves an Ohio law which made ''merchandise belonging to a non-resident when 'held in a storage warehouse for storage only' '' tax exempt. The court said that the law did not deny the resident equal protection. Several pronouncements of the court are significant.

''The States have a very wide discretion in the laying of their taxes. * * * [T]he States have the attribute of sovereign powers in devising their fiscal systems to ensure revenue and foster their local interests.'' (Page 526.)

The enactments of the state are, of course, subject to

502

the Fourteenth Amendment to the United States Constitution. The Court stated, at 526, 527:

"But that clause imposes no iron rule of equality, prohibiting the flexibility and variety that are appropriate to reasonable schemes of state taxation. * * * The State must proceed upon a rational basis and may not resort to a classification that is palpably arbitrary. The rule often has been stated to be that the classification 'must rest upon some ground of difference having a fair and substantial relation to the object of the legislation.' "

This distasteful portion of the income tax law cannot be said to be invidious since the purpose of the entire act is in no sense politically selfish when the announced purpose, and compelling intent, of the General Assembly was to provide revenue for the support of schools and local government functions, which functions are growing to astronomical proportions.

To suggest that the whole financial fabric of the state of Ohio, presently operative, be nullified because a segment of the taxpayers are, until legislative relief arrives, suffering a disadvantage is to defy the reasonable and practical to the point of the absurd. As quoted *ante*, a classification is not invalid "* * * because not made with exactness or because it may result in some inequality." (10 Ohio Jurisprudence 2d 711, Constitutional Law, Section 656.)

That the income tax law does not reflect the "invidious," especially as to R. C. 5747.08 (E), is apparent when it so clearly reveals an intention to minimize the cost of auditing returns and minimizing the evasion by tying state procedures to those employed by the federal authorities. Terms employed in the Ohio act have the same meaning as those used in the Internal Revenue Code. (R. C. 5747.01.) Adjusted gross income, the beginning point in the state return, is the same as that shown on the taxpayers' federal return. Since the adjusted gross income shown on the federal joint return of husband and wife relates to their state return, the requirement of the state that the return made to it must likewise be made jointly appears to be a valid add-

ed method. So convenient is the device that to label it "invidious" is, at least, unrealistic.

Plaintiffs' assignment of error number 2 is not well taken and is overruled.

Having held R. C. Chapter 5747 constitutional, as not invidious or discriminating, it cannot logically be regarded as operating, or being caused to operate, by state authority, unconstitutionally. The matter raised in assignment of error number 10 has likewise been disposed of by the finding of constitutionality.

Plaintiffs' assignments of error numbered 9 and 10 are not well taken and are therefore overruled.

Plaintiffs simply assert in assignment of error 11 that R. C. 5747.02 and 5747.04 are unconstitutionally incompatible. Counsel chooses not to advance an argument in support of the assignment. This court, therefore, is not called upon to consider the assignment of error as seriously advanced and therefore overrules the same.

R. C. 109.20 provides a procedural advantage to an action filed by the Attorney General in permitting it to be heard out of order. R. C. Chapter 2723 affords remedies to taxpayers in an attempt to recover taxes and assessments. R. C. 5703.38 and .39 relate to the use of the injunction in tax matters. All of these sections, says counsel for the appellants, deprive, by reason of their operative effect, these plaintiffs of procedural and substantive due process and are all unconstitutional.

Counsel offers absolutely nothing by way of argument or citation in support of this bare assertion as to those noted statutory sections. This court is therefore not called upon to consider seriously this assignment of error, numbered 12, and therefore overrules it.

A recent decision of the Supreme Court in *State, ex rel. Lukens,* v. *Brown* (1973), 34 Ohio St. 2d 257, deals with constitutional problems. In deciding the case, the court looked to one of its earlier decisions in *State, ex rel. Dickman,* v. *Defenbacher* (1955), 164 Ohio St. 142, commenting that that decision states that the presumption of constitutionality which exists in favor of a legislative enactment

may be overcome only when it is shown " 'beyond a reasonable doubt that the legislation and (state) constitutional provisions are clearly incompatible.' " (Page 258.)

The court then goes on to say:

"In the same vein, it has been asserted that 'the legislative power of the state is vested in the General Assembly, and whatever limitation is placed upon the exercise of that plenary grant of power must be found in clear prohibition by the Constitution * * *. If the constitutionality of the law is involved in doubt, that doubt must be resolved in favor of the legislative power.' " (Id.)

This proposition, according to *Lukens,* is taken from *State, ex rel. Jackman,* v. *Court of Common Pleas* (1967), 9 Ohio St. 2d 159, 162.

The *Dickman* decision to which the Supreme Court referred is an exhaustive one. Paragraph one of the syllabus provides a very succinct statement of the principle to be followed:

"An enactment of the General Assembly is presumed to be constitutional, and before a court may declare it unconstitutional it must appear beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible."

The decision of the trial court filed October 16, 1973, is very complete and discusses carefully and fully all of the minutia to which the complaint of these plaintiffs and the brief and arguments of their counsel have advanced. It is totally unnecessary for this court to duplicate what the trial court has said so well.

For the reasons advanced, it is the considered opinion of this court that plaintiffs' assignments of error are not well taken and that the judgment of the trial court is according to law.

*Judgment affirmed.*

Reilly, J., concurs.

Holmes, J., concurring in part and dissenting in part. I am in agreement with the majority herein that the Ohio

income tax, in R. C. Chapter 5747, is, in the main, a constitutional body of statute law. I would therefore concur with the majority herein that all of such chapter should not be held to be unconstitutional, even though there may be doubt shed upon a certain section or sections of the act.

My concerns about the Ohio income tax law have been centered about the sections dealing with the joint return of income by husband and wife—more particularly, R. C. 5747.08(E). Such section requires that a husband and wife who have filed a joint return for federal income tax purposes must in a like manner file a joint return for Ohio income tax purposes.

In this regard, it is my view that such section of the income tax law discriminates against married persons who have made their choice of filing under the federal law, but are given no right to select their return form under the state act. The prejudicial treatment to the married couple filing a joint return may well place them in considerably higher income brackets for purposes of the tax without having the benefit of a separate tax rate table available, for their use as is present in the federal income tax tables. This I believe to invidiously discriminate against married persons who have filed a joint return for federal purposes.

I would therefore sustain the plaintiffs' ninth, tenth, and eleventh assignments of error, as such assignments relate to R. C. 5747.08(E). Parenthetically, I should state that the claim of unconstitutionality of such section may be moot, in that the Ohio General Assembly, in Am. Sub. H. B. No. 86, the appropriations act, Section 51, provided the following tax relief for married persons filing jointly for the taxable years 1973 and 1974:

"In addition to all other credits provided in section 5747.05 of the Revised Code, there shall be allowed against the tax imposed by section 5747.02 of the Revised Code for taxable year 1973 and taxable year 1974, for taxpayers filing joint returns that qualify under division (B) of this section, a credit equal to the per cent of the amount of tax otherwise due after all other credits to which the taxpayer

is otherwise entitled shown in the table contained in division (A) of this section. If the credit to which a taxpayer is entitled under this section exceeds the amount of any due and unpaid tax for taxable year 1973, the excess shall be treated as an overpayment of tax and refunded in accordance with law.

"(A) The credit to which a taxpayer is entitled under this section in taxable year 1973 and 1974 is the per cent shown in column B that corresponds with the taxpayer's adjusted gross income, less exemptions for the taxable year:

"A.                                B.

"IF THE ADJUSTED GROSS THE CREDIT FOR THE INCOME, LESS EXEMP-    TAXABLE YEAR IS: TIONS, FOR THE TAX YEAR IS:

| A. | B. |
|---|---|
| "$10,000 or less | 20% |
| More than $10,000 but not more than $20,000 | 12% |
| More than $20,000 | 5% |

"(B) The credit shall be allowed only on returns filed by a husband and wife, each of whom had adjusted gross income of $500 or more exclusive of interest, dividends, royalties, rent, and capital gains."