JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff-appellant Iris Powers (Powers) appeals from a decision of the Common Pleas Court that granted defendant-appellee Ferro Corporation's (Ferro) motion for summary judgment on Powers' claims. Upon review, we conclude that there are no genuine issues of material fact and that Ferro is entitled to judgment as a matter of law on Powers' claims. Accordingly, we affirm the trial court's decision.
{¶ 2} A review of the record reveals the following facts: Powers was hired as a Powder Maker at Ferro in October 1994. In January 1995, she was promoted to Laboratory Technician II in the Appliance Group of the Powder Coating Division. The Appliance Group consisted of a Manager, three Chemists, five Technician IIIs and two Technician IIs, one of which was Powers.
{¶ 3} Ferro performs an annual evaluation of all employees. The standard evaluation form rates employees in 13 categories and then requires an overall rating. Employees are evaluated in each category with a rating of one through five, with one being the best.
{¶ 4} In September 1996, Powers received her first performance evaluation by Chemist Harasukh Sheth. Powers received an overall rating of 3" (Meets and Sometimes Exceeds Position Requirements). The evaluation contained four 4" (Needs Improvement) ratings in the areas of Powers' quantity of work, judgment, creativity and industriousness. Sheth's written comments were as follows:
 {¶ 5} Iris has ability to organize and plan her work but needs motivation.
 {¶ 6} Willing to assume given responsibility. Does not take initiative.
 {¶ 7} Iris does not complete some specific tasks as quickly as expected.
 {¶ 8} Iris definitely need[s] to improve diligence, steady work habit[s].
{¶ 9} In June and July of 1996, Powers was counseled by her manager, Mike Kowalsky, regarding her attendance and failure to give timely notice regarding absences.
{¶ 10} In May 1997, Powers received her annual performance evaluation by Kowalsky. She received another overall rating of 3. This evaluation showed improvement in both performance and attendance. The evaluation contained two 2" (Usually Exceeds Position Requirements) ratings in the areas of responsibility and human relations.
{¶ 11} In the fall of 1997, Ferro states that Powers' performance and attendance declined. Kowalsky states that he counseled Powers twice in the Fall of 1997 about coming in late, leaving early, and about her failure to report in the morning to find out about her work schedule for the day. Kowalsky also states that he counseled Powers after he received complaints from Chemists Bob Ramser and Sheth about the quality and accuracy of Powers' work. Kowalsky placed memos detailing these sessions into Powers' file. Powers denies being counseled by Kowalsky.
{¶ 12} In October 1997, John Payne became Powers' immediate supervisor. Shortly after Powers was assigned to Payne's group, he asked her out to lunch on two occasions, which she declined. Powers claims that the lunch invitations were personal in nature. Payne contends that he asked Powers out to lunch as a courtesy to her because she had missed two appreciation lunches sponsored by Kowalsky.
{¶ 13} In May 1998, Powers claims that Payne was standing close to her in the laboratory, and under the guise of reviewing coated panels, looked directly at her breasts and remarked those are nice.
{¶ 14} On May 6, 1998, Payne and Dan Szczepanic, a Laboratory Technician, were in the laboratory looking at a questionnaire downloaded from the internet titled How Sleazy Are You? The questionnaire contained sexually crude and offensive questions concerning sexual intercourse, oral sex, anal sex, masturbation, and beastiality. Powers saw the men laughing and asked to see what they were looking at. Payne gave her the questionnaire and asked her if she wanted to fill it out. Powers replied in the negative and walked away. She claims that Payne asked her what she was afraid of?
{¶ 15} Shortly after seeing the questionnaire, Powers made a complaint to Carlos Ortiz, Director of Research and Development. Ortiz told Powers he would investigate the matter. Ortiz spoke with Payne and told him to apologize to Powers, which he did. Ortiz also issued a formal written reprimand to Payne which was placed in his file.
{¶ 16} On May 8, 1998, Powers made another complaint to Bill Newhouse, Human Resources Director, about the questionnaire. She also told Newhouse about the lunch invitations and the comment that Payne had made that she felt was directed at her breasts. Three days later, Newhouse met with Payne and told him that such offensive material was unacceptable in the workplace. Newhouse also spoke with several other employees to discuss the sexual harassment policy. Powers admits that she had no more problems with Payne following this incident. (Tr. at 224).
{¶ 17} In May 1998, Powers received her annual performance evaluation by Kowalsky.[1] She received an overall rating of 4 (Needs Improvement). This evaluation indicated that Powers was continuing to have attendance problems and needed improvement in five areas: job knowledge; organization; quantity of work; and judgment and creativity. The evaluation contained one 5" (Unsatisfactory) rating in the areas of responsibility. Kowalsky's written comments were as follows:
 {¶ 18} Iris seems unwilling to learn based on the fact that all procedures must be restated each time she starts another job.
 {¶ 19} Most actions require close monitoring by supervisor.
 {¶ 20} When asked to evaluate and try new ideas, cooperation is minimal. Original thinking is nonexistent.
{¶ 21} Sometime in late May 1998, after Powers complained of Payne's actions, she claims that she entered a unisex bathroom and saw a penis drawn on the container for the toilet seat covers with the words that Iris found this offensive and was going to file a charge. Powers also states that a sign on a spray booth which stated Your mother doesn't work here. Clean up after yourself had been crossed off to read her name instead of Your mother. Powers complained about these writings, but Newhouse found no evidence of the writings when he investigated. In fact, Powers later admitted during her deposition that she had removed the writings herself. (Tr. at 257-260).
{¶ 22} On June 1, 1998, Powers filed a charge of employment discrimination alleging sexual harassment with the Equal Employment Opportunity Commission (EEOC).
{¶ 23} In June 1998, Powers was placed on an attendance plan. Pursuant to the terms of the attendance plan, Powers was required to sign in and out and have all absences approved by her supervisor. Powers was the only employee at Ferro to receive an attendance plan in 1998. Ferro claims that Powers had the worst attendance of any employee.
{¶ 24} In March 1999, Powers was placed on a probationary plan because of the overall 4" rating on her 1998 performance review. Under the probationary plan, Powers would be monitored and evaluated for 90 days on the key functions and responsibilities of her position.
{¶ 25} In May 1999, Powers received her annual performance evaluation by Kowalsky. She received an overall rating of 3. This evaluation indicated that Powers was coming off a probation period and that her performance was improving. The evaluation still showed that she needed to improve her attendance.
{¶ 26} On September 1, 2000, Powers filed this complaint against Ferro alleging claims of sexual harassment and retaliation.[2]
{¶ 27} On October 10, 2000, Ferro filed a motion for summary judgment which was granted by the trial court on March 6, 2001. It is from this decision that Powers now appeals and raises two assignments of error that we will discuss in reverse order.
 {¶ 28} II. THE DETERMINATION OF THE COURT DEFENDANTS [SIC] MOTION FOR SUMMARY JUDGMENT IS GRANTED IS IN ERROR ON ITS FACE AS IT DOES NOT STATE THE REQUIREMENTS OF LAW THAT THE COURT FINDS NO MATERIAL FACTS REMAIN UNRESOLVED AND THAT THE DEFENDANT WAS ENTITLED TO JUDGMENT AS A MATTER OF LAW.
{¶ 29} In her second assignment of error, Powers claims that the trial court's judgment entry granting summary judgment is error on its face. Specifically, Powers claims that the trial court was required to state in its judgment entry that the Court finds that no material facts remain unresolved and the Defendant was entitled to judgment as a matter of law. We disagree.
{¶ 30} A trial court is not required to issue a written opinion containing findings of fact and conclusions of law when ruling on a motion for summary judgment. Tiefel v. Gilligan (1974), 40 Ohio App.2d 491,495. Rather, the trial court need only issue a judgment entry that contains a clear and concise pronouncement of the Court's judgment and a sufficient pronouncement of its decision upon which to review the issues raised by appellants' appeal. Rogoff v. King (1993), 91 Ohio App.3d 438,449.
{¶ 31} Here, the trial court's entry stated Defendant's MSJ is granted. This is sufficient to apprise the parties of the court's judgment. See Ibid.
{¶ 32} Powers' second assignment of error is overruled.
 {¶ 33} I. THE TRIAL COURT ERRED IN GRANTING DEFENDANTS [SIC] MOTION FOR SUMMARY JUDGMENT WITH AN ENTRY DEFENDANTS MSJ IS GRANTED. AS SUBSTANTIAL MATERIAL FACT REMAINS UNRESOLVED AND THE DEFENDANT WAS NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW.
{¶ 34} In her first assignment of error, Powers claims that the trial court erred in granting summary judgment in favor of Ferro because genuine issues of material fact existed concerning her claims for sexual harassment and retaliatory discharge.
{¶ 35} An appellate court reviews a trial court's grant of summary judgment de novo. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102,105. "De novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine if as a matter of law no genuine issues exist for trial." Brewer v. Cleveland City Schools (1997), 122 Ohio App.3d 378, citing Dupler v. Mansfield Journal (1980), 64 Ohio St.2d 116, 119-120.
{¶ 36} Summary judgment is appropriate where it appears that: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. Harless v. Willis Day Warehousing Co., Inc. (1978), 54 Ohio St.2d 64, 66; Civ.R. 56(C).
{¶ 37} The burden is on the movant to show that no genuine issue of material fact exists. Id. Conclusory assertions that the nonmovant has no evidence to prove its case are insufficient; the movant must specifically point to evidence contained within the pleadings, depositions, answers to interrogatories, written admissions, affidavits, etc. which affirmatively demonstrate that the nonmovant has no evidence to support his claims. Dresher v. Burt (1996), 75 Ohio St.3d 280, 293; Civ.R. 56(C). Unless the nonmovant then sets forth specific facts showing there is a genuine issue of material fact for trial, summary judgment will be granted to the movant.
{¶ 38} With these principles in mind, we proceed to consider whether the trial court's grant of summary judgment in Ferro's favor was appropriate.
{¶ 39} A. Sexual Harassment
{¶ 40} R.C. 4112.02(A) makes it an unlawful discriminatory practice for any employer, because of the sex of any person, to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment. This includes subjecting the employee to sexual harassment. Peterson v. Buckeye Steel Casings (1999),133 Ohio App.3d 715, 723.[3]
{¶ 41} Here, Powers has alleged "hostile environment" sexual harassment. In order to establish a claim of hostile-environment sexual harassment, Powers must show (1) that the harassment was unwelcome, (2) that the harassment was based on sex, (3) that the harassing conduct was sufficiently severe or pervasive to affect the terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment, and (4) that either (a) the harassment was committed by a supervisor, or (b) the employer, through its agents or supervisory personnel, knew or should have known of the harassment and failed to take immediate and appropriate corrective action. Hampel v. Food Ingredients Specialties, Inc. (2000), 89 Ohio St.3d 169, 176-77.
{¶ 42} Not all workplace conduct that can be construed as having sexual overtones can be characterized as harassment forbidden by the statute. Mentor Savings Bank v. Vinson (1986), 477 U.S. 57, 67. Rather, the conduct complained of must be severe or pervasive enough to create an environment that not only the victim subjectively regards as abusive but also a reasonable person would find hostile or abusive. Harris v. Forklift Systems, Inc. (1993), 510 U.S. 17, 21-22. Pursuant to this standard, conduct that is merely offensive is not actionable. Id. at 21.
{¶ 43} The court must examine the circumstances surrounding the conduct and must consider them within the framework of several factors to determine if the conduct is actionable. These factors include the following:
{¶ 44} (1) the conduct's frequency;
{¶ 45} (2) the conduct's severity;
 {¶ 46} (3) whether the conduct is physically threatening or humiliating; and
 {¶ 47} (4) whether the conduct unreasonably interferes with the victim's work performance.
{¶ 48} Id. at 23.
{¶ 49} With these factors in mind, we conclude that Payne's behavior was not severe or pervasive and did not unreasonably interfere with Powers' work performance.[4]
{¶ 50} Powers complained of approximately four instances of Payne's conduct toward her over a span of seven months: (1) he asked her to lunch twice; (2) he once commented those are nice while reviewing panels which Powers believes was directed at her breasts; and (3) he showed her a questionnaire containing explicit sexual content to her after she asked him what he was looking at. Payne never touched Powers.[5] He made no threats. He did not ask her, explicitly or by implication, to have sex with him. He asked her to lunch on two occasions and allegedly made an ambiguous comment about her breasts. He showed her a questionnaire with explicit sexual content after she requested to see it. While these actions were offensive, inappropriate and unprofessional, Title VII was "not designed to purge the workplace of vulgarity." Baskerville v. Culligan Internat'l Co. (C.A.7, 1995),50 F.3d 428, 430.
{¶ 51} While we do not condone the conduct of Payne, we find as a matter of law that the evidence construed most favorably to Powers is insufficient to support a finding that the actions of Payne were severe or pervasive enough to create an objectively hostile work environment. Similarly, Powers' claims with respect to the two incidents of graffiti on the walls does not rise to the level of sexual harassment. Again, "not all workplace conduct that may be described as `harassment' affects a `term, condition, or privilege' of employment within the meaning of Title VII." Meritor, 477 U.S. at 67.
{¶ 52} Finally, since Powers stated that the quality and quantity of the work she performed never suffered and was always good (Tr. 344-349), she can not prove that Payne's actions toward her affected her in her work performance.
{¶ 53} The evidence shows that Powers cannot establish the elements necessary to support her claim of workplace sexual harassment in violation of R.C. 4112.02. Accordingly, the trial court did not err in granting Ferro's motion for summary judgment on the claim for sexual harassment.
{¶ 54} B. Retaliatory Discharge
{¶ 55} To prove a claim of retaliation, Powers must establish three elements: (1) that she engaged in protected activity; (2) that she was subjected to an adverse employment action; and (3) that a causal link exists between a protected activity and the adverse action. Peterson v. Buckeye Steel Casings (1999), 133 Ohio App.3d 715, 727.
{¶ 56} Once an employee successfully establishes a prima facie case, it is the employer's burden to articulate a legitimate reason for its action. Id. If the employer meets its burden, the burden shifts back to the employee to show that the articulated reason was a pretext. Id.
{¶ 57} Here, Powers' pursuit of her sexual harassment claim against Payne constituted protected activity. See Collins v. Rizkana (1995), 73 Ohio St.3d 65. Powers claims the following conduct was retaliatory; she received a poor performance evaluation and was placed upon an attendance plan.
{¶ 58} Assuming arguendo that Powers has established a prima facie case of retaliation, Ferro has articulated several legitimate business reasons for giving Powers a poor evaluation and placing her on an attendance plan.
{¶ 59} First, Ferro submits evidence that Powers received an overall rating of 4" (Needs Improvement) in her performance review in 1998 because she had poor attendance, came in late, left early, failed to report in the morning to receive her work schedule for the day, performed poor quality work, and failed to properly clean her equipment. Specifically, Powers had been counseled with regard to her attendance and performance twice in the Fall of 1997.
{¶ 60} Second, Ferro offers evidence that all of the technicians evaluated by Kowalsky received similar reviews and that not one of the technicians received all 1" ratings.
{¶ 61} Next, Ferro offers evidence that Powers was placed on an attendance plan because she had the worst attendance of any of the employees. Ferro offers evidence that Powers had been criticized by her supervisors about her attendance before her complaints of harassment. Finally, Ferro offers the testimony of Powers herself who admits that she knew that management considered her attendance to be a problem.
{¶ 62} Faced with summary judgment, Powers failed to offer sufficient evidence that any of these justifications for her evaluation and attendance plan were pretext and, moreover, failed to even raise an inference that retaliation actually motivated these decisions. Accordingly, the trial court did not err in granting Ferro's motion for summary judgment on the claim for retaliation.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANNE L. KILBANE, P.J., and TERRENCE O'DONNELL, J., CONCUR.
[1] Powers did not get her evaluation until September of 1998 due to the fact that she was gone from work for an extended period of time on medical leave.
[2] Powers' original complaint was filed on January 19, 1999. She filed a notice of voluntary dismissal on March 8, 2000.
[3] In Ohio, "federal case law interpreting Title VII of the Civil Rights Act of 1964, Section 2000(e) et seq., Title 42, U.S. Code, is generally applicable to cases involving alleged violations of R.C. Chapter 4112." Little Forest Med. Ctr. v. Ohio Civ. Rights Comm. (1991),61 Ohio St.3d 607, 609-610.
[4] It appears that the parties do not dispute that Powers would prevail on the first and second elements of her claim.
[5] Powers claims that Payne brushed or rubbed her shoulders on a couple of occasions; however, she did not report this alleged touching to anyone at Ferro.