PORTCO, INC., Appellee,

v.

EYE SPECIALISTS, INC. et al., Appellants.

[Cite as *Portco v. Eye Specialists, Inc.*, 177 Ohio App.3d 139, 2008-Ohio-3154.]

Court of Appeals of Ohio,
Fourth District, Scioto County.

No. 08CA3213.

Decided June 20, 2008.

140

Ruggiero & Haas and Daniel P. Ruggiero, for appellee.

Dagger, Johnston, Miller, Ogilvie & Hampson, and Aaron R. Conrad, for appellants.

---

ABELE, Presiding Judge.

{¶ 1} This is an appeal from a Scioto County Common Pleas Court judgment, entered after a trial to the court, for Portco, Inc., plaintiff below and appellee herein, on its claim against Eye Specialists, Inc., defendant below and appellant herein.

{¶ 2} Appellant assigns the following errors for review:

### FIRST ASSIGNMENT OF ERROR:

The trial court erred by failing to credit defendant for the entire amount of the West Virginia electric lien.

### SECOND ASSIGNMENT OF ERROR:

The trial court erred in failing to award defendant damages pursuant to the contract based upon plaintiff's failure to complete the work prior to the completion date.

### THIRD ASSIGNMENT OF ERROR:

The trial court's decision that plaintiff failed to provide credible evidence to support defendant's claim for unworkmanlike performance of a contract is against the manifest weight of the evidence.

{¶ 3} In July 2003, the parties entered into a contract whereby Portco agreed to renovate a former NAPA auto body parts store into a medical facility for use by Eye Specialists. In return, Eye Specialists promised to pay Portco $320,178. Because Eye Specialists wanted to open its Portsmouth office as soon as possible, the contract called for "substantial completion" of the building no later than November 27, 2003. The contract defined "substantial completion" to mean possession of an "occupancy permit." If the renovation was not substantially completed by that time, Portco agreed to pay a $200 per day penalty. In the end, Portco did not obtain the required "occupancy permit" until several months after the targeted completion date.

{¶ 4} Portco commenced the instant action on September 28, 2004 and alleged that the contract was completed, but Eye Specialists owed an additional $31,061.13 for extra construction (change orders) that it had requested. Eye Specialists denied liability, counterclaimed for various alleged breaches of the contract, and requested compensatory damages in excess of $25,000.[1] Portco denied any liability on the counterclaim.

{¶ 5} At the November bench trial, the parties focused on the change orders and their impact on the overall contract. Gary Cunningham, owner of Portco, testified at length about numerous change orders Eye Specialists requested during construction. John Kendall, a carpenter and inspector, testified that roof leaks in the building were caused by faulty installation of a generator. The witness explained it would take $8,000 to $10,000 to repair the roof. Likewise, Terry Lee Shultz, the clinic director for Eye Specialists, testified that he was quoted $10,000 to repair the roof.[2]

{¶ 6} The trial court entered judgment for Portco on December 1, 2006. The court concluded that due to the various change orders, Portco was not at fault for the delay in completing the construction project. Further, the court ruled that Portco was due and owing $17,885.13 for additional work that it had performed.

{¶ 7} An appeal was taken from that judgment, but we dismissed it for lack of a final order due to an unresolved counterclaim. See *Portco, Inc. v. Eye Specialists, Inc.*, 173 Ohio App.3d 108, 2007-Ohio-4403, 877 N.E.2d 709. On January 16, 2008, the trial court found that Eye Specialists failed to present any credible evidence in support of its counterclaim and, thus, entered judgment against them. This appeal followed.

---

1. Eye Specialists also filed a third party complaint against West Virginia Electric, Inc., on a mechanics lien that it had against the property. That matter was ultimately resolved on a default judgment. The trial court ruled that the lien was "null and void" and ordered the Scioto County Recorder to cancel it of record.

2. It is unclear whether Shultz was referring to Kendall's estimate or to another quote.

## I

{¶ 8} Appellant's first assignment of error involves the issue of monies owed to a materialman. West Virginia Electric, Inc. ("WVE") was to supply an "emergency generator" to be used in operating rooms. A dispute arose between WVE and Portco prompting WVE to file a mechanic's lien against the property. That lien was released in this action when WVE defaulted on answer to Eye Specialists' third-party complaint against them. Eye Specialists argues that because the lien was vacated, Portco had no legal obligation to pay WVE for the generator and, thus, has been unjustly enriched by that amount. Eye Specialists therefore concludes that the amount of damages it was ordered to pay Portco should be credited by the amount of the generator. We disagree.[3]

{¶ 9} We believe that appellant fails to distinguish the mechanic's lien and the contractual obligation (or debt) that underlies it. See *Schlueter v. Shaheen* (Nov. 8, 1989), Hancock App. No. 5–88–27, 1989 WL 138133 (courts consistently recognize separate enforcement of the lien and the underlying contract); *Thrush v. Thrush* (Apr. 26, 1988), Union App. No. 14–86–17, 1988 WL 40427 (distinction between mechanic's lien and underlying debt). A mechanic's lien (1) gives a materialman an interest in the property to secure payment for materials and (2) fixes the order of priority for that payment. The debt underlying the lien is completely separate.

{¶ 10} Here, the trial court's order voiding the mechanic's lien on Eye Specialists' property removed WVE's security in that property for payment of the generator. It did not affect the underlying debt Portco owed WVE for that material.

{¶ 11} Accordingly, we find no merit in appellant's first assignment of error, and it is hereby overruled.

## II

{¶ 12} Appellant asserts in its second assignment of error that the trial court erred by failing to award damages under the contract due to Portco's failure to complete all construction by the specified date.

{¶ 13} In its December 1, 2006 judgment, the trial court found that "it would be inappropriate to assess" a penalty for the failure to timely complete the

---

**3.** We note that after release of the lien, Portco paid $6,500 to settle the claim for the generator. Gary Cunningham agreed during his testimony that the difference between the original cost of the generator and the amount for which he settled with WVE should be deducted from the amount of damages to which his company was entitled from Eye Specialists. Because this issue is irrelevant to the legal principles involved, however, we need not consider the settlement in our analysis.

construction because the delay resulted from Eye Specialists' change orders. Generally, an appellate court should not reverse a trial court's factual finding if that finding is supported by some competent, credible evidence. *Shemo v. Mayfield Hts.* (2000), 88 Ohio St.3d 7, 10, 722 N.E.2d 1018; *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, at the syllabus. This standard of review is highly deferential and even "some" evidence is enough to support a court's judgment and prevent a reversal. See *Barkley v. Barkley* (1997), 119 Ohio App.3d 155, 159, 694 N.E.2d 989; *Willman v. Cole,* Adams App. No. 01CA725, 2002-Ohio-3596, 2002 WL 1560888, ¶ 24.

{¶ 14} Gary Cunningham, the owner of Portco, testified about the numerous change orders that Eye Specialists requested. He also stated that, but for those change orders, the construction would have been completed by the November 27, 2003 deadline. This is sufficient to support the trial court's conclusion on the matter.

{¶ 15} Accordingly, we hereby overrule appellant's second assignment of error.

### III

{¶ 16} In its third assignment of error, Eye Specialists objects to the trial court's determination that it failed to adduce credible evidence to show that Portco performed in an unworkmanlike manner. In particular, Eye Specialists argues that the court ignored testimony of its expert witness that Portco's work caused the roof to leak. Eye Specialists also points out that Portco offered no evidence to rebut the testimony of its expert.

{¶ 17} As trier of fact, questions of weight and credibility generally rest with the trier of fact. See *Cole v. Complete Auto Transit, Inc.* (1997), 119 Ohio App.3d 771, 777–778, 696 N.E.2d 289; *Jacobs v. Jacobs,* Scioto App. No. 02CA2846, 2003-Ohio-3466, 2003 WL 21500026, at ¶ 31. The rationale for deferring to the trier of fact on those issues is because it is best situated to view the various witnesses and to observe their demeanor, gestures and voice inflections and to use those observations to weigh credibility. *Myers v. Garson* (1993), 66 Ohio St.3d 610, 615, 614 N.E.2d 742; *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 461 N.E.2d 1273. A trier of fact may choose to believe all, part, or none of the testimony of any witness who appears before it. *Rogers v. Hill* (1998), 124 Ohio App.3d 468, 470, 706 N.E.2d 438; *Stewart v. B.F. Goodrich Co.* (1993), 89 Ohio App.3d 35, 42, 623 N.E.2d 591. It is important to recognize that a trier of fact is not required to accept the testimony of a witness simply because that testimony was uncontroverted. See *GTE N., Inc. v. Carr* (1993), 84 Ohio App.3d 776, 780, 618 N.E.2d 249, 251, at fn. 3; see also *State v. Caldwell* (1992), 79 Ohio App.3d 667, 680, 607 N.E.2d 1096, 1105.

{¶ 18} In the case sub judice, the trial court stated that it did not find the expert's testimony to be credible. Because this appellate court is not in a position to view that witness, or hear his testimony, we should not "second-guess" the trial court on the issues of evidence weight and witness credibility.

{¶ 19} Accordingly, we hereby overrule appellant's third assignment of error.

{¶ 20} Having reviewed all errors assigned and argued by appellant in its brief, and finding merit in none of them, the judgment of the trial court is affirmed.

Judgment affirmed.

McFarland, J., concurs.

Kline, J., concurs in assignments of error II and III, and dissents as to assignment of error I.

Kline, J., dissenting in part.

{¶ 21} I respectfully dissent as to the first assignment of error and concur in judgment and opinion as to the second and third assignments of error.

{¶ 22} With regard to the first assignment of error, I agree with the majority's opinion insofar as it finds the underlying debt owed to WVE pursuant to contract remained despite the dismissal of the mechanics' lien. As a result, I agree that there is no merit to Eye Specialists' contention that Portco's payment to WVE was voluntary. Thus, the trial court did not err in awarding Portco the $6,500 it paid to WVE in settlement of the underlying debt.[4]

{¶ 23} However, Eye Specialists' alternative argument is that the trial court erroneously stated that the amount owed to WVE was $11,000, rather than the actual $11,789.53 originally owed to WVE. Eye Specialists contends that it should have been credited $5,289.53 ($11,789.53 minus the $6,500 amount paid by Portco), rather than the $4,500 actually credited ($11,000 minus the $6,500 amount paid by Portco). I agree, and would sustain Eye Specialists' assignment of error in this regard. Thus, in my view, Portco's award should be reduced from $17,885.13 to $17,095.60.

{¶ 24} Accordingly, I dissent, in part.

---

4. Although not totally clear, it appears that Eye Specialists argues that the court awarded Portco the entire $11,789.53 owed to WVE. This is not the case. The trial court found that WVE was owed $11,000 but was paid $6,500 by Portco in full settlement of the debt. The court only awarded Portco the $6,500 it paid, and credited Eye Specialists $4,500.