[Cite as *Solomon v. Harwood*, 2011-Ohio-5268.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 96256**

---

## ALEX A. SOLOMON, TRUSTEE

PLAINTIFF-APPELLANT
CROSS-APPELLEE

vs.

## DALE HARWOOD, ET AL.

DEFENDANTS-APPELLEES

and

## RESOURCE TITLE AGENCY, INC.

DEFENDANT-APPELLEE
CROSS-APPELLANT

---

**JUDGMENT:**
**AFFIRMED**

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case Nos. CV-644729 and CV-664133

**BEFORE:** Jones, J., Blackmon, P.J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:**   October 13, 2011

**ATTORNEY FOR APPELLANT**

Harold Pollock
Harold Pollock Co., L.P.A.
5900 Harper Road, Suite 107
Solon, Ohio 44139


**ATTORNEYS FOR APPELLEES**

**For Dale Harwood, et al.**

Ronald A. Rispo
Shawn W. Maestle
Weston Hurd, L.L.P.
The Tower at Erieview
1301 East 9th Street, Suite 1900
Cleveland, Ohio 44114

**For David J. Horvath**

Nicholas D. Satullo
Reminger Co., L.P.A.
1400 Midland Building
101 Prospect Avenue, West
Cleveland, Ohio 44115

**For Remah Mustafa**

Russell S. Bensing
1350 Standard Building
1370 Ontario Street
Cleveland, Ohio 44113

**For RBS Citizens**

Gregory P. Amend
Kohrman Jackson & Krantz, P.L.L.
1375 East Ninth Street
One Cleveland Center, 20th Floor

Cleveland, Ohio 44114
Attorneys continued

**For RBS Citizens, N.A.**

Kathleen A. Nitschke
Ari H. Jaffe
Giffen & Kaminski, L.L.C.
1300 East Ninth Street
Suite1600
Cleveland, Ohio 44114

**For Resource Title Agency Inc.**

David M. Cuppage
Climaco, Wilcox, Peca, Tarantino, Garofoli
55 Public Square
Suite 1950
Cleveland, Ohio 44113

LARRY A. JONES, J.:

{¶ 1} Plaintiff-appellant, Alex Solomon, Trustee, appeals the trial court's judgment in favor of defendants-appellees, Dale Harwood, Mukhless and Remah Mustafa, RBS Citizens N.A., David Horvath, and defendant-appellee cross- appellant, Resource Title Agency. For the reasons that follow, we affirm.

Procedural History and Facts

{¶ 2} The facts and procedural history of this case are lengthy and convoluted.[1]

---

[1] Since a single succinct statement of all the material facts is difficult given the number of parties and claims involved, we will discuss many of the facts pertinent to each party with our analysis of the legal issues.

What is undisputed is that in 2003, real estate investor Dale Harwood purchased real property located at 1359 Adelaide Street in Westlake for $1.1 million. In August 2005, Harwood contracted with Solomon to sell the property for only $595,000. In October 2005, Harwood allowed Solomon to take possession of the home prior to the sale, and the parties executed a written agreement by which Solomon was to pay $1,800 per month in rent until the sale of the house could go through. The sale did not occur, however, because Harwood could not convey title free and clear. Solomon alleges he began to make improvements to the property shortly after moving in.

{¶ 3} In October 2006, Washington Mutual Bank, the holder of the first mortgage on the property, began foreclosure proceedings. Solomon stopped paying rent in July 2007. In September 2007, Solomon and Harwood entered into a second contract, whereby Solomon would buy the house for $575,000 through a "short sale" process that would be approved by Washington Mutual. The bank approved a short sale that contemplated a closing on or before November 3, 2007. Solomon, who at one time had enough cash to pay for the house outright, was now in need of a mortgage to finance the house. At this time, Harwood retained attorney David Horvath to represent his interests.

{¶ 4} Solomon was unable to obtain the necessary financing, so he and Harwood entered into another agreement, this time extending the contract 30 days, until November 30, to obtain financing for a new purchase price of $525,000. On December 6, Harwood offered to extend the financing time limit an additional 14 days if Solomon met certain conditions. On December 13, Horvath faxed a letter to

Solomon's attorney, David Lynch, withdrawing the offer to sell.

{¶ 5} On December 14, 2007, Solomon filed a mechanic's lien against the property in the amount of $107,000. On December 17, he filed suit against the appellees, asserting various claims. He then filed two amended complaints. Solomon's second amended complaint asserted the following claims against Harwood: specific performance (Count I), breach of contract (Count II), declaratory relief (Count III), promissory estoppel (Count IV), fraud and misrepresentation (Count V), and intentional and/or reckless infliction of emotional distress (Count XII). The complaint asserted the following claims against Harwood's attorney, David Horvath: promissory estoppel (Count IV), fraud and misrepresentation (Count V), intentional and/or reckless infliction of emotional distress (Count XII), and legal malpractice (Count XIV).

{¶ 6} The complaint asserted the following claims against the parties who eventually purchased the property, Mukhless and Remah Mustafa: declaratory relief (Count VI), tortious interference (Count VII), intentional and/or reckless infliction of emotional distress (Count XII). The complaint requested declaratory relief from the Mustafas's mortgage holder, RBS Citizens (Count VI), and asserted the following claims against the title agency, Resource Title: breach of contract (Count IX), negligence (Count X), and breach of fiduciary duty (Count XI).

{¶ 7} Solomon also set forth a claim titled "occupying claimant law" (Count XIII) asking for the fair market value of all improvements, although Solomon did not name a party to this count. Solomon further asked for a preliminary and permanent injunction against all the defendants.

{¶ 8} Each of the appellees answered the amended complaint. Resource Title, the Mustafas, and Harwood filed counterclaims against Solomon. A long and arduous discovery process began. The appellees individually moved for summary judgment, which the court granted, without opinion. The trial court also discharged the mechanic's lien Solomon had filed against the property and ordered him evicted from the property. The court subsequently granted the Mustafas's counterclaim for eviction and Harwood's counterclaim for breach of contract (failure to pay rent).

{¶ 9} Harwood, the Mustafas, and Resource Title individually moved for summary judgment on the issue of damages. The trial court subsequently awarded Harwood compensatory damages of $97,829.88, punitive damages in the amount of $75,000, and attorney fees in the amount of $56,188.98; awarded damages to the Mustafas in the amount of $90,200.83; and awarded attorney fees and expenses to Resource Title in the amount of $52,832.35.

## Assignments of Error

{¶ 10} On appeal, Solomon raises eleven assignments of error for our review:

"I. The trial court erred in granting summary judgment to appellees where appellees Harwood, Resource Title, and Horvath have unclean hands.

"II. The trial court erred in granting summary judgment to Mustafa where Mustafa interfered with Solomon's contract and took title to the property in violation of the doctrine of *lis pendens* with actual notice of Solomon's interest in the property.

"III. The trial court erred in granting summary judgment to appellees where genuine issues of fact and credibility exist regarding whether Harwood had anticipatorily breached the purchase agreement, and whether Solomon had financing to purchase the property and could have closed such transaction had Harwood not breached the contract the day preceding the scheduled closing.

"IV.   The trial court erred in enforcing indemnification agreement language in Resource's standard conditions of escrow where the evidence established unequivocally that Resource breached its fiduciary duty and contractual responsibilities to Solomon to assist Harwood in avoiding his contractual obligations to Solomon and/or was negligent in terminating the escrow prematurely.

"V.   The trial court erred in granting summary judgment to Horvath where Solomon satisfied both the privity and malice prongs of *Scholler*, the question of whether malice existed was a jury issue, and Solomon provided expert testimony in support of his legal malpractice claim.

"VI.   The trial court erred in granting summary judgment to [RBS] as the validity of [RBS's] mortgage deeds depends upon the erroneous summary judgment in favor of Mustafa.

"VII. The trial court erred in disregarding the application of the occupying claimant law R.C. 5303.08, to the claims of Solomon.

"VIII. The trial court erred in denying Solomon the right to a jury trial on damages.

"IX.   The trial court erred in discharging Solomon's mechanic's lien.

"X.   The trial court erred in awarding damages to appellees Harwood, Resource, and Mustafa, and all such awards must be vacated.   Further, there was no lawful basis to render punitive damages against Solomon.

"XI.   The trial court erred in failing to issue findings of fact and conclusions of law."

{¶ 11} Each assignment of error addresses Solomon's claims against a separate appellee or group of appellees; we will discuss the evidence relevant to each party in turn.

Standard of Review

{¶ 12} We review an order granting summary judgment de novo, applying the same standard the trial court used.   "Pursuant to Civ.R. 56, summary judgment is

appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the non-moving party, said party being entitled to have the evidence construed most strongly in his favor." *Zivich v. Mentor Soccer Club, Inc.*, 82 Ohio St.3d 367, 369, 1998-Ohio-389, 696 N.E.2d 201.

<u>Harwood</u>

{¶ 13} In the first and third assignments of error, Solomon argues that the trial court erred in granting summary judgment to Harwood. Solomon claims that there was ample evidence to show that he was ready and willing to purchase the Adelaide property and, if not for Harwood's misdeeds, he would have purchased the house.

{¶ 14} The crux of Solomon's argument on appeal is that an issue of fact remains regarding whether he was able to obtain the financing necessary to close the transaction in a timely fashion. To support his argument that he would have been able to close the transaction by the extension date, December 14, 2007, he attacks the credibility of his lender, Richard Gill, whom, Solomon claims, changed his story when he decided to "align" with the appellees.

{¶ 15} A review of the voluminous record in this case shows that there is no genuine issue of material fact regarding whether Solomon was able to close the transaction by the close of business on December 14, 2007. Simply put, Solomon was not able to obtain the necessary financing to purchase the property within the time allotted by the purchase agreement and subsequent extension.

{¶ 16} When Solomon applied for a mortgage to purchase the property in October

2007, his application was denied. Harwood then extended the deadline an additional 30 days to November 30, 2007. The parties executed an addendum, which stated that "[i]f Solomon has not provided funds sufficient to satisfy his reimbursement obligations under this Contract * * * the purchase agreement between Solomon and Harwood will be null and void."

{¶ 17} The purchase agreement expired on November 30, 2007. Solomon admitted at deposition that his attorney, David Lynch, informed him on December 1 that he did not yet have financing for the property. On December 6, Harwood offered by letter to extend the contract an additional 14 days, if Solomon agreed to pay $2,000 and return the offer letter after executing the "affirmation and acknowledgment" portion of the letter, agreeing to the terms of the extension.

{¶ 18} It is undisputed that Solomon did not return Harwood's offer letter. Solomon claims he signed the letter, but admits neither he nor his attorney ever returned the letter. Lynch avers that it was his understanding that the parties were dealing "in good faith," thus, it was unnecessary to execute the offer letter. But, by the plain terms of the letter, it required a signature to take effect. On December 13, 2007, at 3:40 p.m., Horvath sent a fax to Lynch withdrawing the December 6 offer. Based on these facts, the contract to purchase the property expired on November 30, 2007, and the failure to complete the transaction on or before the closing date resulted in the expiration of the contractual relationship. See *Graines v. Wald & Fisher, Inc.* (Mar. 31, 1988), Cuyahoga App. No. 53640.

{¶ 19} Notwithstanding the expiration of the contract, Solomon proposes that he

still has a cause of action against Harwood because he would have been able to obtain financing by December 14, 2007. But the record belies that contention. Richard Gill, the "hard money" private lender Lynch contacted to finance the transaction, testified that Solomon failed to comply with the necessary prerequisites to obtain the loan, including submitting the loan application, disclosure forms, and sales contract, or Solomon's tax returns, employment verification, credit reports, bank statements, and insurance information. Gill testified that he was "willing and able" to make the loan, but Solomon and Lynch "had not provided me with all the necessary documentation for me to make the loan commitment." In fact, according to Gill, he and Solomon had not even discussed the basic terms and conditions of the loan, including the interest rate or length of the loan.

{¶ 20} Thus, the trial court correctly granted summary judgment to Harwood. Moreover, there is no evidence that Harwood had "unclean hands" in dealing with Solomon.

{¶ 21} Therefore, the first assignment of error is overruled as it relates to Harwood, and the third assignment of error is overruled in toto.

<u>Horvath</u>

{¶ 22} In the first and fifth assignments of error, Solomon alleges that Harwood's attorney, David Horvath, had "unclean hands" and committed legal malpractice against Solomon.

{¶ 23} First, there is no evidence that Horvath had "unclean hands" in his relations with Solomon. There is nothing other than Solomon's own unsupported

allegations claiming that Horvath was somehow involved in nefarious activity in relation to his handling of the Adelaide property. Absent anything more, Solomon's allegations cannot survive summary judgment. The first assignment of error is overruled as it relates to Horvath.

{¶ 24} Next, Solomon argues that Horvath committed legal malpractice against him. We find no merit to this argument.

{¶ 25} To establish a claim for legal malpractice, Solomon must show that 1) Horvath owed him a duty; 2) Horvath failed to conform to the standard of care required by law; and 3) there is a causal connection between the conduct complained of and the resulting damage or loss. *Vahila v. Hall*, 77 Ohio St.3d 421, 1997-Ohio-259, 674 N.E.2d 1164. There is no evidence that Horvath ever represented Solomon; nor is Solomon arguing that Horvath was his attorney. Horvath represented Harwood, who was being sued by Solomon. Solomon was represented by his own counsel, David Lynch.

{¶ 26} In *Scholler v. Scholler* (1984), 10 Ohio St.3d 98, 462 N.E.2d 158, the Ohio Supreme Court held that attorneys have a qualified immunity from liability to third parties for acts or omissions concerning the representation of a client. The Court found that "[a]n attorney is immune from liability to third persons arising from his performance as an attorney in good faith on behalf of, and with the knowledge of his client, unless such third person is in privity with the client or the attorney acts maliciously." Id. at paragraph one of the syllabus. Solomon claims that his cause of action against Horvath should survive summary judgment because there is a question of

fact whether the attorney acted with "malice." But Solomon has set forth no evidence, other than unsupported allegations, that Horvath acted with any malice.

{¶ 27} Solomon has also failed to set forth evidence that he and Harwood are in privity. To be in privity, Solomon would have to show that his and Harwood's interests were the same, "such that representing the client is equivalent to representing the party alleging privity with the client." *Scholler* at 103-104. Solomon and Harwood clearly had opposing interests; therefore, they were not in privity to each other.

{¶ 28} Thus, the fifth assignment of error is overruled.

Resource Title

{¶ 29} Resource Title Agency was the title agency that Harwood and Solomon were using in their attempts to complete the sale of the property.

{¶ 30} In October 2007, during the time period in which Solomon was to gain financing to purchase the house, Solomon and Harwood caused an escrow to be opened at Resource Title and deposited the contract into escrow with the title agency. Solomon and Harwood executed two forms: "Standard Conditions of Settlement Agent" and "Acceptance of Escrow." The Standard Conditions contained an indemnification clause whereby both buyer and seller agreed to hold the agency harmless from any loss or damage resulting from the termination or declinations and also indemnify the agency for "any loss, cost or damages including, without limitations, attorneys fees and costs of litigation."

{¶ 31} After the escrow was opened, Solomon and Harwood executed an

"Escrow Instructions Addendum to Contract." Pursuant to the addendum, Solomon deposited $200,000 of the purchase price into escrow. Resource Title then transferred the funds to Washington Mutual, in conformance with the agency's standard processes.

{¶ 32} Although the remainder of the funds were to be deposited with Resource Title prior to the extended closing date of December 14, 2007, Harwood never deposited those funds. Resource Title refunded the $200,000 deposit to Solomon. In its counterclaim, the title agency claimed that it incurred damages of $52,385.35 in attorney fees and litigation costs.

{¶ 33} On appeal, Solomon alleges that the trial court erred in granting summary judgment in favor of Resource Title because the company had "unclean hands" (first assignment of error), and breached its fiduciary duty and contractual responsibilities to Solomon (fourth assignment of error). Solomon also claims that the trial court erred in awarding damages to the agency (tenth assignment of error). But there is no evidence that Resource Title acted improperly. When it became known to the title company that the purchase was not going to go through, the company refunded Solomon's $200,000 deposit. Moreover, Solomon executed the Standard Conditions form, which included an indemnification clause. Based on these facts, the trial court did not err when it granted summary judgment in Resource Title's favor.

{¶ 34} The first assignment of error is overruled as it relates to Resource Title. The fourth assignment of error is overruled in toto. As to the tenth assignment of error, it is discussed separately, infra.

The Mustafas

{¶ 35} Mukhless and Remah Mustafa were the eventual purchasers of the Adelaide property. In the second assignment of error, Solomon argues that the trial court erred in granting summary judgment to the Mustafas because they interfered with his contract on the property and the doctrine of lis pendens should have applied to bar their possession of the property.

{¶ 36} Although Solomon mentions in the heading to his second assignment of error that the Mustafas interfered with his contract with Harwood, he neither makes that argument nor supports it. App.R. 16(A)(7) provides that the appellant's brief shall include "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies. * * *." "It is not the duty of an appellate court to search the record for evidence to support an appellant's argument as to any alleged error." *Rodriguez v. Rodriguez*, Cuyahoga App. No. 91412, 2009-Ohio-3456, ¶7, citing *State v. McGuire* (Apr. 15, 1996), Preble App. No. CA95–01–001. Thus, we could, in our discretion, choose not to address Solomon's contention that the Mustafas interfered with his contract. But in briefly addressing his arguments, there is no evidence that the Mustafas interfered with the contract Harwood had with Solomon.

{¶ 37} In order to recover for a claim of intentional interference with a contract, one must prove (1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) the lack of justification, and (5) resulting damages. *Kenty v. Transamerica Premium Ins.*

*Co.*, 72 Ohio St.3d 415, 1995-Ohio-61, 650 N.E.2d 863, paragraph two of the syllabus.

{¶ **38**} Solomon has presented no evidence that the Mustafas knew of his contract with Harwood and that if they did know, they induced Harwood to breach the contract. The evidence presented shows that Harwood granted Solomon one extension and then offered to grant him a second extension to come up with financing for the house. Harwood contracted with the Mustafas on December 7, 2007, but that agreement was "subject to release from tenant." Although the purchase agreement the Mustafas and Harwood executed occurred before December 14, the contract between Harwood and Solomon ended November 30, 2007. Thus, there was no contract between Harwood and Solomon for the Mustafas to interfere in. Solomon's argument on this claim fails.

{¶ **39**} Finally, the doctrine of lis pendens does not apply to the case at bar. R.C. 2703.26 provides that "[w]hen a complaint is filed, the action is pending so as to charge a third person with notice of its pendency. While pending, no interest can be acquired by third persons in the subject of the action, as against the plaintiff's title." Solomon has alleged that the Mustafas acquired their interest in the Adelaide property prior to his lawsuit being filed. Therefore, R.C. 2703.26 does not apply. But even if a court were to find that the Mustafas acquired the interest after Solomon filed his complaint, lis pendens is not a substantive right. "It does not create a lien, but charges the purchaser with notice of the pending action. If applicable, it does not prevent persons from transacting an interest in the property subject to litigation"; rather, any conveyed interest becomes subject to the outcome of the pending litigation. (Internal citations omitted.) *Cincinnati ex rel. Ritter v. Cincinnati Reds, L.L.C.*, 150 Ohio App.3d 728,

2002-Ohio-7078, 782 N.E.2d 1225, appeal not allowed by 98 Ohio St.3d 1539, 2003-Ohio-1946, 786 N.E.2d 901. Therefore, even if the doctrine did apply, it would not create a cause of action against the Mustafas.

{¶ 40} Based on these facts, the trial court correctly granted summary judgment to the Mustafas, and the second assignment of error is overruled.

RBS Citizens, N.A.

{¶ 41} RBS Citizens, N.A., was the Mustafas's lender. RBS recorded two mortgages on the Adelaide property in February 2008. Solomon argues in his sixth assignment of error that "the same arguments that pertain to Mustafa pertain to [RBS]." Again, Solomon claims that the doctrine of lis pendens invalidates the deed from Harwood to the Mustafas because the transfer occurred during the pendency of the court case. Since the Mustafas's purchase of the property is null and void, Solomon argues, RBS's mortgages are also void. RBS contends that the doctrine of lis pendens does not apply so the mortgages granted in favor of RBS were valid.

{¶ 42} Because we have already found that the trial court correctly granted summary judgment in favor of the Mustafas, it follows that the trial court was correct in granting summary judgment to RBS. There is no evidence that the mortgages RBS granted to the Mustafas were void.

{¶ 43} The sixth assignment of error is overruled.

Occupying Claimant Law

{¶ 44} In the seventh assignment of error, Solomon argues that the trial court erred by failing to apply Ohio's "occupying claimant law" to this case. R.C. 5303.08

provides as follows:

> "A person who, without fraud or collusion on his part, obtained title to and is in the quiet possession of lands or tenements, claiming to own them, shall not be evicted or turned out of possession by any person who sets up and proves an adverse and better title, until the occupying claimant, or his heirs, is paid the value of lasting improvements made by the occupying claimant on the land, or by the person under whom he holds, before the commencement of suit on the adverse claim by which such eviction may be effected, unless the occupying claimant refuses to pay to the party establishing a better title the value of the lands without such improvements, on demand by him or his heirs, when such occupying claimant holds:

> "(A) Under a plain and connected title, in law or equity, derived from the records of a public office;

> (B) By deed, devise, descent, contract, bond, or agreement, from and under a person claiming a plain and connected title, in law or equity, derived from the records of a public office, or by deed authenticated and recorded;

> "(C) Under sale on execution against a person claiming a plain and connected title, in law or equity, derived from the records of a public office, or by deed authenticated and recorded;

> "(D) Under a sale for taxes authorized by the laws of this state;

> "(E) Under a sale and conveyance made by executors, administrators, or guardians, or by any other person, in pursuance of an order or decree of court, where lands are directed to be sold."

{¶ 45} According to Solomon, R.C. 5303.08 applies to this case because he was an equitable owner of the property based on the first purchase agreement he signed with Harwood. He argues he had "color of title" under the deed the parties deposited into escrow with Resource Title.

{¶ 46} It is unclear whether Solomon is arguing that he was entitled to payment for the improvements he alleges he made to the property or that he should not have been

evicted from the property. Nevertheless, R.C. 5303.08 does not apply to Solomon because he never gained title to the property. Although he and Harwood deposited the deed into escrow, Solomon never obtained the deed or title to the property. A purchaser, after delaying for many years to pay the purchase price, is not entitled to value of improvements. *Mann v. Dun* (1853), 2 Ohio St. 187. In addition, payment for lasting improvements, pursuant to R.C. 5303.08, can be awarded only if the occupying claimant acquired title to the disputed premises in a manner designated by the statute. *Ohio Dept. of Adm. Serv. v. Morrow* (1990), 67 Ohio App.3d 225, 586 N.E.2d 259.

{¶ 47} According to the original purchase agreement executed by the parties, Solomon was a lessee, who was charged with paying rent and utilities and maintaining the property. Thus, the trial court did not err in failing to apply R.C. 5303.08 to the case at bar.

{¶ 48} The seventh assignment of error is overruled.

Attorney's Fees

{¶ 49} In the eighth assignment of error, Solomon claims the trial court erred in denying him the right to a jury trial on damages.

{¶ 50} In this assignment of error, Solomon does not challenge that court's decision to award attorney's fees, instead, he merely claims that he had a right to a jury trial on the issue. But a litigant does not have a right to trial by jury to determine the amount of attorney's fees. *Digital & Analog Design Corp. v. N. Supply Co.* (1992), 63 Ohio St.3d 657, 590 N.E.2d 737, overruled on other grounds by *Zoppo v. Homestead*

*Ins. Co.*, 71 Ohio St.3d 552, 1994-Ohio-461, 644 N.E.2d 397. We also decline to review the amount of attorney's fees awarded in this case, as Solomon does not dispute the amount of the award.

{¶ 51} Therefore, the eighth assignment of error is overruled.

<u>Mechanic's Lien</u>

{¶ 52} In the ninth assignment of error, Solomon argues that the trial court erred in discharging his mechanic's lien. Within this assignment of error, Solomon contends that he was the equitable owner of the property; therefore, he was authorized to perform work on the property or to hire someone else to do the work.

{¶ 53} "The purpose of the mechanics' lien law is to provide a contractor or material man with a means of obtaining a lien on real estate to secure a claim for labor performed or material supplied." *Thrush v. Thrush* (Apr. 26, 1988), Union App. No. 14-86-17. "A mechanics' lien (1) gives a materialman an interest in the property to secure payment for materials and (2) fixes the order of priority for that payment." *Portco, Inc. v. Eye Specialists, Inc.*, 177 Ohio App.3d 139, 2008-Ohio-3154, 894 N.E.2d 84, at ¶9. R.C. 1311.02 provides for the filing of a mechanics' lien where labor has been performed on personal property, as follows:

> "Every person who performs work or labor upon or furnishes material in furtherance of any improvement undertaken by virtue of a contract, express or implied, with the owner, part owner, or lessee of any interest in real estate, or the owner's, part owner's, or lessee's authorized agent, and every person who as a subcontractor, laborer, or material supplier, performs any labor or work or furnishes any material to an original contractor or any subcontractor, in carrying forward, performing, or completing any improvement, has a lien to secure the payment therefor upon the improvement and all interests that the owner, part owner, or lessee may have or subsequently acquire in the land or leasehold to

which the improvement was made or removed."

{¶ 54} Mechanics' liens can only properly attach where a contract exists. *JC&F Invests., L.L.C. v. Housholder*, Shelby App. No. 17-08-11, 2008-Ohio-5313. "[T]he statute requires by its terms, as a condition to the existence of a lien, that the labor be performed or material furnished by virtue of a contract, expressed or implied, with the owner * * *." Id., citing *Benes v. United States* (C.A. 6, 1960), 276 F.2d 99.

{¶ 55} The mechanic's lien Solomon filed claimed a lien in the amount of $107,000. To support this amount, Solomon provided, during discovery, undated invoices that showed maintenance and repairs made to the property from October 2005 to December 2007. He also submitted various receipts from The Home Depot and for landscaping supplies.

{¶ 56} As discussed in the seventh assignment of error, although Solomon was the intended purchaser of the property, his status was that of a lessee. The lease the parties signed provided, in part, as follows:

" * * *

"3. Lease amount with be Eighteen Hundred dollars per month, *plus* the cost of all necessary maintenance and repairs. Buyer will pay for all utilities including water and sewer while occupying this property during the lease.

" * * *

"6. Buyer agrees to lease and maintain this property until the sale is completed. * * *." (Emphasis added).

{¶ 57} In order for the mechanic's lien to properly attach to the property, there had to be a contract for the renovations. But there was no contract between the parties,

either express or implied, that provided Solomon would be compensated for improvements he made to the property. The only contract present in this case was the lease, which did not concern any renovations that Solomon would need to make, and, in fact, clearly states that Solomon is responsible for the cost of "all necessary maintenance and repairs." See *JC&F Invests.* at ¶43. Therefore, the trial court did not err in discharging the mechanic's lien.

{¶ 58} Accordingly, the ninth assignment of error is overruled.

Damages

{¶ 59} In the tenth assignment of error, Solomon claims that the trial court erred in awarding damages and in assessing punitive damages against him. However, once again, Solomon has failed to support his claims with citations to the record, case law, or statutes. See App.R. 12(A)(2) and 16(A)(7). Instead, he merely states in arguing this assignment of error, "all of the damage awards on this case are predicated upon determinations of liability which are erroneous. Therefore, all damage awards in this case must be vacated. Further, there were no valid grounds to impose punitive damages against Solomon for filing a lien." That is his entire argument.

{¶ 60} "An appellate court is not a performing bear, required to dance to each and every tune played on an appeal." *Rodriguez*, supra, citing *State v. Watson* (1998), 126 Ohio App.3d 316, 710 N.E.2d 340. Since it is not this court's job to make Solomon's arguments for him, we will not further address this assignment of error. The tenth assignment of error is overruled.

Findings of Fact and Conclusions of Law

{¶ 61} Finally, Solomon claims in his eleventh assignment of error that the trial court erred in denying his motion for findings of fact and conclusions of law. But it is well settled in Ohio that a trial court is not required to issue a written opinion containing findings of fact and conclusions of law when ruling on a motion for summary judgment. *Tiefel v. Gilligan* (1974), 40 Ohio App.2d 491, 495, 321 N.E.2d 247; Civ.R. 52.

{¶ 62} The eleventh assignment of error is overruled.

<u>Cross-appeal</u>

{¶ 63} Resource Title filed a notice of cross-appeal, assigning one error for our review. In its sole assignment of error, Resource Title claims the trial court committed reversible error in denying its motion for sanctions.

{¶ 64} Our review of a trial court's decision on a motion for sanctions is reviewed for an abuse of discretion. *Mitchell v. W. Res. Area Agency on Aging*, Cuyahoga App. Nos. 83837 and 83877, 2004-Ohio-4353, citing *Cook Paving & Constr. Co. Inc. v. Treeline Inc.*, Cuyahoga App. No. 77408, 2001-Ohio-4235; *Pisani v. Pisani* (1995), 101 Ohio App.3d 83, 654 N.E.2d 1355.

{¶ 65} Resource Title's argument is puzzling. Resource Title moved for sanctions against Solomon and his attorney pursuant to R.C. 2323.51, which provides for award of attorney's fees as sanction for frivolous conduct. Resource Title then moved for summary judgment on the issue of damages. The trial court granted the motion for summary judgment on the issue of damages and awarded Resource Title attorney's fees and expenses in the amount of $52,832.35, which is the amount Resource Title requested. Pursuant to statute, Resource Title cannot recover more than

reasonable attorney's fees and expenses. Thus, there is nothing more the trial court could have awarded them, nor is Resource Title disputing the amount awarded to them pursuant to their summary judgment motion.

{¶ 66} The trial court did not err in denying Resource Title's motion for sanctions. Therefore, the cross-assignment of error is overruled.

Judgment affirmed.

It is ordered that appellees recover of appellant their costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

LARRY A. JONES, JUDGE

PATRICIA A. BLACKMON, P.J., and
FRANK D. CELEBREZZE, JR., J., CONCUR